# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2121

_____

| | | |
|---|---|---|
| Wright Electric, Inc., | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | |
| | * | |
| National Labor Relations Board, | * | Petition for Review |
| | * | of an Order of the |
| Respondent. | * | National Labor Relations Board |
| | * | |
| International Brotherhood of Electrical | * | |
| Workers, AFL-CIO, Local Union | * | |
| No. 292, | * | |
| | * | |
| Intervenor on Appeal. | * | |

_____

No. 99-2309

_____

| | | |
|---|---|---|
| Wright Electric, Inc., | * | |
| | * | |
| Respondent, | * | |
| | * | |
| v. | * | |
| | * | Application for Enforcement |
| National Labor Relations Board, | * | of an Order of the |
| | * | National Labor Relations Board |
| Petitioner. | * | |
| | * | |

International Brotherhood of Electrical    *
Workers, AFL-CIO, Local Union    *
No. 292,    *
   *
      Intervenor on Appeal.    *

_____

Submitted:    October 20, 1999

Filed:    January 19, 2000

_____

Before McMILLIAN, HEANEY and MURPHY, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Wright Electric, Inc., ("Wright Electric") petitions this court for review of a decision and order of the National Labor Relations Board ("Board") entered pursuant to the Board's authority under 29 U.S.C. § 160(c). See Wright Electric, Inc. & International Brotherhood of Electrical Workers, Local 292, 327 N.L.R.B. No. 196, 1999 WL 195532 (Mar. 31, 1999) (hereinafter "NLRB order"). Wright Electric argues that (1) the Board erred as a matter of law in concluding that Wright Electric violated § 8(a)(1) of the National Labor Relations Act ("the Act"), 29 U.S.C. § 158(a)(1), by requesting signed union authorization cards in a state court lawsuit and (2) the Board's conclusion that Wright Electric discriminated against applicant Louis Lutz due to his union affiliation is not supported by substantial evidence on the record as a whole. The Board has filed a cross-application for enforcement of its order. For the following reasons, the Board's order is enforced and the petition for review is denied.

-2-

## Background

The following statement of facts is taken in large part from the Board's order and attached appendix. In October 1992, Wright Electric, a non-unionized electric contractor headquartered in Plymouth, Minnesota, sought to hire journeyman electricians. Thomas A. Ouellette, a member of the International Brotherhood of Electrical Workers, Local 292, AFL-CIO ("Local 292"), applied for the position. However, he failed to state on his employment application that he had previously been employed by union contractors. Michael J. Priem, Local 292's business agent, had advised Ouellette that if Ouellette believed that listing a union contractor on the application would prevent him from being hired, he may want to leave it off. Nonetheless, Ouellette signed the application statement certifying that his answers were "true and complete" and acknowledging that "false or misleading information" could result in discharge. Ouellette was hired by Wright Electric and began work on November 12, 1992.

Wright Electric transferred Ouellette to a job site where supervisors knew of his prior union employment. Ouellette notified Priem, and Priem faxed a letter to Wright Electric stating that Ouellette was a union member and would be "engaging in protected concerted activity." Within hours of receiving the fax, Wright Electric contacted Ouellette and sent him home due to "lack of work." About three days later, on February 5, 1993, Wright Electric called Ouellette back to work; he worked a portion of the day and was then terminated. Wright Electric claimed that Ouellette was discharged for concealing and misrepresenting his employment history on his application.

Local 292 filed an unfair labor practice charge, claiming that the discharge was due to Ouellette's union activity and thus violated §§ 8(a)(1) and (3) of the Act. However, the Regional Director dismissed the charge for lack of merit. Subsequently, in August 1993, Wright Electric filed suit in Minnesota state court against Local 292,

Ouellette, and Priem for fraudulently misrepresenting Ouellette's employment history as part of a "pattern and practice of misrepresentation and concealment," wrongful use of property, and malicious prosecution. Against Ouellette alone, the complaint alleged breach of contract, breach of fiduciary duty, and unjust enrichment, all based on Ouellette's fraudulent employment application. With the complaint, Wright Electric filed discovery requests directed at Local 292 requesting, among other things, all union authorization cards signed by Wright Electric employees. Wright Electric claimed that obtaining the signed union authorization cards could provide evidence of Local 292's intent to destroy Wright Electric's business rather than merely to organize its employees. Wright Electric claimed the cards were discoverable under broad state court discovery rules.

In March 1994, while the state court lawsuit was pending, Wright Electric again sought to hire an electrician. Earl Standafer, Wright Electric's human resources manager, placed a newspaper ad in the Minneapolis Star Tribune. Louis J. Lutz, an unemployed Local 292 member, saw the ad and discussed the position with Priem. Priem prepared and signed a cover letter in which he asserted that Lutz was licensed as a journeyman electrician, that Lutz had been a union member for fifteen years, and that "any protected activity in which Mr. Lutz may choose to engage following his employment by you will be conducted strictly within the guidelines established by law and the National Labor Relations Board and will not interfere with his efficiency or productivity." The cover letter was mailed along with Lutz's resume to the post office box specified in the newspaper ad.

Wright Electric received Lutz's resume along with the resumes of six other individuals. Standafer attempted to contact two of the applicants who purportedly had the appropriate qualifications, recent experience working on residential (as compared with commercial) sites, and a journeyman license. No attempt was made to contact Lutz. Standafer testified that he alone made the decision not to contact Lutz, and his decision was based on two factors: (1) Lutz's recent experience was commercial rather

than residential, and (2) due to Lutz's recent commercial work, which generally pays better than residential work, Lutz was likely to quit if commercial work became available. Ultimately, Standafer hired an electrician who had not responded to the newspaper ad.

On July 13, 1994, Local 292 filed an unfair labor practice charge alleging that Wright Electric refused to consider Lutz's application due to his union affiliation. On November 9, 1994, Local 292 filed a separate unfair labor practice charge challenging Wright Electric's discovery request in the state court litigation seeking signed union authorization cards.[1] The General Counsel for the Board investigated Local 292's allegations and, based upon the above-mentioned charges, filed a consolidated complaint asserting that Wright Electric had violated § 8(a)(1) and (3) of the Act.

The matter was tried before an Administrative Law Judge ("ALJ"). The ALJ made findings of fact and conclusions of law, which were in turn reviewed by the Board. See NLRB Order at *7-30 (decision of the ALJ); id. at *1-5 (decision and order of the Board).

Regarding Wright Electric's state court discovery request, the ALJ concluded that, "in light of the Supreme Court's holding in Bill Johnson's[ Restaurants v. NLRB, 461 U.S. 731 (1983) ("Bill Johnson's")], it is not possible to locate an independent basis under the Act for enjoining [Wright Electric] from seeking the requested information in the course of the state proceeding." NLRB order at *22. The ALJ went on to explain:

---

[1]Local 292 also filed an unfair labor practice charge on September 13, 1993, amended February 18, 1994, challenging Wright Electric's state court lawsuit generally. The Board decided to hold that charge "in abeyance pending disposition of the state court litigation," NLRB order at *2, and it is not presently before us.

> Rules governing litigation under the Act cannot serve as a device for overriding First Amendment and compelling state interests which the Supreme Court already has held outweigh the inherently coercive and retaliatory effects of state lawsuits. A contrary conclusion would eviscerate the holding of that case, by allowing through indirection a result – control of state litigation – which the Court has barred from being exercised by direction.

Id. at 23 (internal citation omitted).

On review, the Board disagreed with the ALJ's determination that the discovery request was beyond its reach. Citing National Telephone Directory Corp., 319 N.L.R.B. 420, 421 (1995), the Board noted that it "zealously seeks to protect the confidentiality interests of employees because of the possibility of intimidation by employers who obtain the identity of employees engaged in organizing." NLRB order at *3. The Board further observed that the Supreme Court, in Bill Johnson's, specifically recognized the Board's "authority to enjoin a lawsuit 'that has an objective that is illegal under federal law.'" Id. at *4 (quoting 461 U.S. at 738 n.5). The Board reasoned in the present case that Wright Electric's discovery request had an illegal objective because it intruded upon the confidentiality interests of the employees who had signed union authorization cards. The Board also rejected Wright Electric's contention that a lack of signed union authorization cards would tend to demonstrate Local 292's goal to disrupt Wright Electric's business rather than to organize Wright Electric's employees. See id. at *3. In any event, the Board reasoned, Wright Electric's inquiry could be limited to finding out whether or not any cards had been signed, without allowing Wright Electric to obtain access to the identities of those employees who had signed, if any. See id. The Board concluded that the discovery request fell within the "illegal objective exception" to the general holding in Bill Johnson's and "enjoy[ed] no special protection." Id. at *4.

As to Wright Electric's refusal to consider Lutz for employment, the ALJ found that several factors provided "objective indicia of discriminatory motivation." Id. at *25. The ALJ noted that Lutz would have been the "lone activist on behalf of the Union" and, moreover, at the time of Lutz's application, Wright Electric was already involved in litigation with Local 292, a circumstance which would "hardly dispose an employer to view with favor an applicant whose resume had been submitted by the very labor organization which was being sued by that employer." Id. at *26. The ALJ also found that the explanations advanced by Standafer for failing to consider Lutz's application were "not advanced credibly" and "were contradicted by his own admitted actions in connection with his procedure for hiring an electrician." Id. at *25. For example, Standafer stated that Lutz was not considered because his electrical experience was largely commercial rather than residential; however, Wright Electric contacted (although did not hire) an applicant with less residential experience and a lower license level than Lutz. See id. Furthermore, Standafer stated that he did not consider Lutz because he believed Lutz would not remain on the job for long, having recently worked on higher paying commercial jobs; however, the individual hired for the position had also recently worked on commercial jobs. See id. The ALJ repeatedly suggested that Lutz's union membership was the only significant difference between his application and that of the others who were contacted or hired. See id. at *20, 25, 26. The ALJ concluded that Wright Electric's refusal to consider Lutz for employment was discriminatorily based on his union affiliation, in violation of § 8(a)(1) and (3) the Act. See id. at *26.

On review of the ALJ's determinations related to Lutz, the Board adopted the ALJ's findings and conclusions. The Board ordered Wright Electric to offer Lutz employment with backpay for loss of earnings suffered as a result of the discrimination. Id. at *5.

Wright Electric timely petitioned this court for review, and the Board cross-petitioned for enforcement of its order.

## Discussion

We will enforce the Board's order if it correctly applied the law and its findings are based upon substantial evidence on the record as a whole. See Universal Camera Corp. v. NLRB, 340 U.S. 474 (1951). When determining if the Board's factual findings are supported by substantial evidence on the record as a whole, we give great deference to the credibility determinations made by the ALJ. See Town & Country Electric, Inc. v. NLRB, 106 F.3d 816, 819 (8th Cir. 1997) (order of the Board enforced where ALJ discredited the employer's proffered reasons for refusing to consider union members for hire).

Discovery Request

Wright Electric argues that the Board erred in holding that its discovery request in the state court lawsuit, seeking employees' signed union authorization cards, violated § 8(a)(1) of the Act. See NLRB order at *3. Wright Electric disputes the Board's interpretation and application of the pertinent case law. Wright Electric also maintains that the information requested would be relevant to prove its theory, advanced in the underlying state court lawsuit, that Local 292 has acted with the intent to disrupt Wright Electric's business.

Section 8(a)(1) of the Act provides that it is an unfair labor practice for an employer "to interfere with, restrain, or coerce" employees in their exercise of rights to organize and engage in processes such as collective bargaining. 29 U.S.C. § 158(a)(1). In National Telephone Directory Corp., 319 N.L.R.B. at 421, the Board, on interlocutory review of an administrative law judge's ruling, considered the question of whether an employer, through the use of a subpoena duces tecum, a motion to produce, or cross-examination, could obtain the names of employees who had signed union authorization cards or attended union meetings. Noting that several courts have recognized the risk that "'employees would be "chilled" when asked to sign a union

card if they knew the employer could see who signed,'" id. (citing cases and quoting Committee on Masonic Homes v. NLRB, 556 F.2d 214, 221 (3d Cir. 1977)), the Board reasoned that "the danger of employee intimidation would be severely heightened if an employer could obtain the names of employees who signed cards or attended meetings." Id. at 421 & n.6. The Board held that, to allow an employer with no overriding business interest to obtain such protected information indirectly through litigation tactics (rather than directly through surveillance or interrogation), would violate the purpose and meaning of the Act. See id. at 421. Accordingly, the Board ruled that the employer could not use a subpoena duces tecum, a motion to produce, or cross-examination to learn the identities of employees who had signed union authorization cards or attended union meetings. See id. at 422; cf. Madeira Nursing Center v. NLRB, 615 F.2d 728, 731 (6th Cir. 1980) (employer may not obtain employees' signed union authorization cards under Freedom of Information Act); Pacific Molasses Co. v. NLRB, 577 F.2d 1172, 1183 (5th Cir. 1978) (same).

Wright Electric's attempt in the present case to obtain signed union authorization cards through a state court discovery request is essentially no different from the efforts of the employer in National Telephone Directory Corp. Because it is unlawful under § 8(a)(1) of the Act for an employer to discover or attempt to discover the identities of employees who have signed union authorization cards, Wright Electric's discovery request has an illegal objective. Moreover, we agree with the Board that the information Wright Electric seeks is not relevant to its state law claims. Contrary to the argument advanced by Wright Electric, evidence that there were no employees with a union affiliation prior to Oullette's application would not tend to prove that Local 292 was motivated by an intent to disrupt Wright Electric's business. In sum, because the discovery request has an illegal objective and has no overriding business justification, the Board did not err in enjoining it. See Bill Johnson's, 461 U.S. at 738 n.5 (lawsuit having an illegal objective under the federal labor laws may be enjoined as an unfair labor practice).

Refusal to Hire

Wright Electric next argues that the Board lacked substantial evidence on the record as a whole to conclude that Wright Electric violated § 8(a)(1) and (3) of the Act in refusing to consider Lutz's job application. Wright Electric relies on Standafer's testimony that Lutz was not considered for employment due to his lack of recent residential experience and the likelihood that he would quit for higher paying commercial employment. Wright Electric also argues that the Board erred in refusing to consider certain evidence – including evidence of Lutz's employment and educational history and Local 292's alleged prior falsifications – on the ground that it was not relevant. Wright Electric maintains that evidence of Lutz's background would have shown that Lutz was unqualified for the position and that evidence of Local 292's prior falsifications would have shown that Wright Electric was justified in refusing to consider additional Local 292 referrals.

Section 8(a)(3) of the Act provides that it is an unfair labor practice for an employer "by discrimination in regard to hire or tenure of employment . . . to encourage or discourage membership in any labor organization." 29 U.S.C. § 158(a)(3). When an employer's refusal to hire an applicant is motivated by anti-union animus, § 8(a)(3) is violated. See Hall v. NLRB, 941 F.2d 684 (8th Cir. 1991).

In the present case, the ALJ found, and the Board agreed, that Standafer's proffered business reasons for not hiring Lutz were not credible and were a pretext for Wright Electric's anti-union animus. We afford those findings great deference and perceive no basis on which to set them aside. See Town & Country Electric, 106 F.3d at 819 (discussing deferential standard of review). Moreover, the ALJ declined to consider certain evidence regarding Lutz's background and alleged falsifications by Local 292 because Standafer himself testified that, in deciding not to consider Lutz for the job, he relied solely upon Lutz's resume and cover letter. The ALJ's evidentiary ruling was not an abuse of discretion. See NLRB v. Kolkka, 170 F.3d 939, 942 (9th Cir. 1999) (applying abuse of discretion standard). In sum, in light of the ALJ's

-10-

credibility findings and having considered the entire record – including evidence related to the ongoing state court litigation, Wright Electric's history of refusing to hire union members, and the clear disclosure of Lutz's union affiliation in his application (which distinguished him from the applicants whom Standafer contacted or hired) – we conclude that substantial evidence exists to support the Board's finding that Wright Electric was motivated by anti-union animus when it failed to consider Lutz for employment.

## Conclusion

For the reasons stated, the petition for review is denied and the order of the Board is enforced.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-