**WRIGHT ELECTRIC,
INC., Respondent,**

v.

**Thomas A. OUELLETTE,
et al., Appellants.**

No. A03–1683.

Court of Appeals of Minnesota.

Sept. 14, 2004.

Richard L. Kaspari, Connie L. Howard, Metcalf, Kaspari, Howard, Engdahl & Lazarus, P.A., Minneapolis, MN, for appellants.

Gregg J. Cavanagh, Maple Grove, MN, for respondent.

Maurice Baskin, pro hac vice, Venable LLP, Washington, DC, for amicus Associated Builders and Contractors, Inc.

Nora H. Leyland, pro hac vice, Sherman, Dunn, Cohen, Leifer & Yellig, P.C., Washington, DC, for amicus International Brotherhood of Electrical Workers, AFL-CIO.

Considered and decided by HUDSON, Presiding Judge; LANSING, Judge; and WILLIS, Judge.

## OPINION

HUDSON, Judge.

Appellants Thomas Ouellette, Michael J. Priem, and International Brotherhood of Electrical Workers, Local 292 (IBEW), argue that the National Labor Relations Act (NLRA) preempts respondent Wright Electric, Inc.'s (Wright Electric) claims because Ouellette's conduct of falsifying his employment application to Wright Electric is arguably protected by the NLRA. Wright Electric contends that its claims should proceed in state court because the National Labor Relations Board (NLRB) and the Eighth Circuit Court of Appeals previously rejected IBEW's argument that Wright Electric's claims are preempted, and the NLRB's general counsel refused to file a charge against Wright Electric. Wright Electric also argues that Ouellette's falsifications are not arguably protected because Ouellette's falsifications relate to his qualifications for the position with Wright Electric and not to his union status. Because we find that Wright Electric's claims are preempted by the NLRA, we reverse.

## FACTS

Respondent Wright Electric, Inc. (Wright Electric) is a non-union electrical contractor owned by Terry Korthof. Wright Electric's headquarters is in Plymouth, Minnesota, and it performs residential, commercial, and industrial electrical work in Minnesota and in other states. Wright Electric has never been a signatory to any collective-bargaining agreement with any labor organization.

Appellant Thomas Ouellette began working in electrical construction in 1985. Ouellette worked for a non-union contractor from May 1986 until December 1990 and then went to work for a different non-union contractor, BE & K Construction (BE & K). While on a project for BE & K, Ouellette joined appellant International Brotherhood of Electrical Workers, Local 292 ("IBEW")[1] and participated in efforts to organize the other electricians working on the project. The National Labor Relations Board (NLRB) cited BE & K for illegally disciplining Ouellette and a number of other employees for their union-organizing activities. Ouellette left BE & K in 1990.

In the fall of 1992, Wright Electric advertised in the Minneapolis Star Tribune for journeymen electricians. Appellant Michael J. Priem, an agent of IBEW, suggested to Ouellette that he apply and, if hired, attempt to organize the electricians working for Wright Electric. Priem advised Ouellette that if he put union shops on his application, he probably would not get hired. Ouellette applied to work at Wright Electric, and, when asked to list prior employers on the application, Ouellette omitted BE & K and the union contractors for whom he had worked. Rather than listing the union employers and BE & K, Ouellette extended his dates of em-

ployment at his previous job into 1992. Ouellette signed the application directly below the statement, "I certify that answers given herein are true and complete to the best of my knowledge.... In the event of employment, I understand that false or misleading information given in my application or interview(s) may result in discharge." Wright Electric's field supervisor, Kenneth Stavrum, interviewed Ouellette, and Ouellette indicated that he wanted to leave his current job because the status of the company was uncertain. Stavrum hired Ouellette, and Ouellette was not disciplined until he was fired on February 5, 1993.

In late January 1993, Ouellette was assigned to work on the Prairie View School construction project in Eden Prairie. The general contractor on that project was Penn–Co Construction, Inc. (Penn–Co). Penn–Co was the general contractor on a different school project where Ouellette had worked for a union contractor. On that project, union carpenters had labor disputes with Penn–Co. The union electricians, including Ouellette, supported the carpenters by wearing stickers on their hard hats with Penn–Co's name in a circle with a slash through it. While Ouellette was working on the school project for Wright Electric, Penn–Co supervisors recognized Ouellette. Wright Electric claims that the supervisors recognized Ouellette because the Penn–Co supervisors had experienced problems with Ouellette on a past job when he was working for Gephart Electric. According to Wright Electric, the Penn–Co supervisors gave this information to Wright Electric's foreman. Appellants claim that the supervisors recognized Ouellette and notified Wright Electric's foreman that Ouellette was a union electrician. Ouellette's employment application was reviewed; there was no

---

1. "IBEW" will refer only to Local 292 International Brotherhood of Electrical Workers.

mention of Gephart Electric, and Korthof was informed of the discrepancy.

Korthof conducted an investigation and learned that Gephart Electric had employed Ouellette, and Ouellette did not include that job on his employment application. Korthof also learned that Penn–Co supervisors had experienced problems with Ouellette in the past when Ouellette was employed with Gephart Electric. Wright Electric claims that based on this information, Korthof terminated Ouellette from his employment.

Appellants claim that when Ouellette realized he had been identified as a union member, he called Priem. The next day Priem faxed a letter to Wright Electric and hand-delivered a copy to Stavrum informing him that Ouellette was a union member engaged in protected union-organizing activity during his non-working time. IBEW also claims that shortly after receiving Priem's letter, Stavrum paged Ouellette and told him to go home because there was a lack of work. Ouellette called a few days later to inquire about work, and Korthof told him there was no work available and that two other electricians were sent home due to a lack of work. Two days later, Ouellette was called in to work and was assigned to spend the day working with a supervisor on a residential project. When Ouellette arrived to work the next day, on February 5, 1993, Korthof told him he was fired and handed him a termination letter stating that the reason for his firing was "falsifying information on employment application." After Ouellette's termination, Wright Electric learned that Ouellette had omitted four other employers from his employment application, including BE & K.

Following his termination, Ouellette, with the support of IBEW and Priem, filed a claim for unemployment-insurance benefits with the Minnesota Department of Jobs and Training.[2] IBEW and Priem filed unfair-labor-practice charges with Region 18 of the NLRB, alleging that Wright Electric had suspended and fired Ouellette because of his union status in violation of the National Labor Relations Act (NLRA). Wright Electric's responsive position statement to the regional director of Region 18 (regional director) states that Ouellette was fired pursuant to strict, nondiscriminatory policies for "[f]alsifying information on [his] employment application." The regional director agreed and determined that there was insufficient evidence to conclude that Wright Electric terminated Ouellette because of his union activities in violation of the NLRA and dismissed the charges without issuing a complaint to the NLRB. IBEW appealed to the NLRB general counsel in Washington, D.C., who refused to overrule the regional director.

In August 1993, Wright Electric brought this action in Hennepin County District Court against IBEW, Ouellette, and Priem. Against Ouellette, Wright Electric asserted breach of at-will employment contract, breach of fiduciary duty and duty of loyalty, recovery of salary and benefits, and unjust enrichment. Against IBEW, Ouellette and Priem, Wright Electric asserted claims of fraudulent misrepresentation, fraudulent concealment, wrongful use of property, malicious prosecution of an unfair-labor practice charge, and malicious prosecution of the unemployment-insurance claim. Specifically, Wright Electric alleged that Ouellette, acting at the direction of IBEW and Priem, submitted a falsified employment application to the

---

2. The unemployment-insurance-benefit claim was ultimately resolved in favor of Wright Electric.

company and thereby obtained employment. Wright Electric also alleged that Ouellette's actions were part of a pattern and practice of fraud perpetrated by IBEW to accomplish their own unlawful objectives. Wright Electric sought compensatory damages, a declaration that IBEW's conduct was unlawful, and an injunction prohibiting such conduct in the future.

IBEW, Priem, and Ouellette brought a motion to dismiss. On January 14, 1994, the district court dismissed the malicious-prosecution claims but ruled that Wright Electric's other claims were maintainable as a matter of law. Wright Electric moved to amend the complaint to state a claim for punitive damages, and the district court allowed Wright Electric to amend its complaint.

After Wright Electric filed the action in Hennepin County District Court, IBEW filed another charge with Region 18 of the NLRB in Minneapolis, alleging that Wright Electric's filing of the Hennepin County lawsuit was itself an independent unfair-labor practice. IBEW also argued, in its charges with the NLRB, that some of Wright Electric's discovery requests in the Hennepin County litigation violated the NLRA, specifically, Wright Electric's attempt to discover the identity of employees who signed union-authorization cards. The NLRB's general counsel issued complaints based on IBEW's charges. The parties stipulated, and the district court ordered, that the Hennepin County action be stayed pending the NLRB resolution of the discovery issues.

The NLRB consolidated IBEW's charges with several charges that do not relate to the Hennepin County litigation, and the NLRB considered all of the charges together. The NLRB held that the discovery sought by Wright Electric regarding the union-authorization cards vi-

olated the NLRA. *Wright Electric, Inc.,* 327 N.L.R.B. 1194, 1195 (1999). The NLRB stayed the question of whether Wright Electric committed an independent unfair labor practice in bringing the Hennepin County lawsuit until the conclusion of the state court litigation. *Id.* at 1194–95. Wright Electric sought review of the decision by the Eighth Circuit Court of Appeals, which affirmed the NLRB's decision in all respects. *Wright Elec., Inc. v. NLRB,* 200 F.3d 1162 (8th Cir.2000).

Appellants then moved the Minnesota state district court for summary judgment, asserting that Wright Electric's claims are preempted by the NLRA. The district court denied the motion on the grounds that "the issues in this case do not give the NLRB jurisdiction," citing the NLRB's 1999 decision as authority. Appellants subsequently filed a notice of appeal with this court.

### ISSUE

Does the NLRA preempt Wright Electric's claims?

### ANALYSIS

On appeal from summary judgment, this court examines whether there are any genuine issues of material fact and whether the lower court erred in its application of the law. *Cummings v. Koehnen,* 568 N.W.2d 418, 420 (Minn.1997). On appeal from a denial of summary judgment, we view the record in the light most favorable to the nonmoving party. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993).

■ The NLRA protects the right of unions and union members to "salt" unorganized workplaces by seeking employment with non-union employers in order to engage in union organizing. *NLRB v. Town & Country Elec., Inc.,* 516 U.S. 85, 96–98, 116 S.Ct. 450, 456–57, 133 L.Ed.2d

371 (1995). "Salting" is the practice by which a union inserts its organizers into an employer's workforce in the hope that they will be able to organize it. *Hartman Bros. Heating & Air Conditioning, Inc. v. NLRB,* 280 F.3d 1110, 1111 (7th Cir.2002). "Salt" is the term used to describe the union organizer who is inserted into the workforce. *See id.* With some key exceptions, the NLRA also protects a union member's right to misrepresent his or her employment history in order to conceal union status when seeking employment in a non-union workplace. *Id.* at 1112; *Winn–Dixie Stores, Inc.,* 236 N.L.R.B. 1547, 1547 (1978).

Appellants argue that because the NLRA protects a union member's right to misrepresent his employment history in order to conceal his union status when seeking employment in a non-union workplace, Wright Electric's claims are preempted by the NLRA. Appellants contend that if the conduct, which a party is seeking to subject to state law, is even "arguably protected" by the NLRA, the primary and exclusive jurisdiction of the NLRB requires that both state and federal courts cede jurisdiction over the matter. Thus, appellants contend that the NLRA preempts Wright Electric's claims because Ouellette's conduct of falsifying his employment application to Wright Electric was arguably protected by the NLRA. Appellants also argue that the general counsel's decisions not to file a charge against Wright Electric or assert that federal law preempts Wright Electric's claims, are not—for collateral-estoppel purposes—determinations that Wright Electric's claims are not preempted.

Wright Electric counters that the NLRB has repeatedly refused to assert its exclusive jurisdiction and that, therefore, the NLRB and the Eighth Circuit Court of Appeals have effectively rejected IBEW's preemption claim. Specifically, Wright Electric contends that Ouellette's falsifications are not preempted by the NLRA as evidenced by the fact that the regional director and the NLRB's general counsel refused to file charges against Wright Electric, thereby determining that Ouellette's falsifications are not arguably protected. Wright Electric argues that an employer is at liberty to deny a union adherent employment for a host of non-discriminatory reasons and argues that Ouellette's falsifications do not relate to his union status, but rather, relate to his qualifications for the position with Wright Electric.

In denying appellants' motion for summary judgment, the district court found that the issues in this case do not give the NLRB jurisdiction, and noted that the NLRB determined that the remaining causes of action (Wright Electric's state-law claims) required "final adjudication" of the state court proceedings. The district court concluded that there are genuine issues of material facts as to the fraud, breach-of-contract, unauthorized-use-of-property, and unjust-enrichment claims.

Preemption

A. The NLRB and Eighth Circuit Decisions

When state law seeks to regulate the exercise of rights protected by the NLRA, the NLRA preempts the conflicting provisions of state law by operation of the Supremacy Clause. *Brown v. Hotel & Rest. Employees & Bartenders, Local 54,* 468 U.S. 491, 503, 104 S.Ct. 3179, 3186, 82 L.Ed.2d 373 (1984).

But Wright Electric argues that the NLRB and Eighth Circuit Court of Appeals effectively rejected IBEW's preemption claim. IBEW contends that the preemption issue was never before the NLRB or the Eighth Circuit Court of Appeals and

thus was never directly decided. Our review of the record convinces us that appellants are correct—the administrative-law judge, the NLRB, and the Eighth Circuit did not *directly* address whether Wright Electric's claims are preempted by the NLRA. Our holding is supported by a brief overview of these three decisions.

The issues presented to the administrative-law judge (that are pertinent to this case) were whether Wright Electric violated the NLRA by (1) bringing two malicious prosecution claims against IBEW, Ouellette, and Priem, and (2) requesting discovery of employee union-authorization cards. *Wright Elec., Inc.*, 327 N.L.R.B. at 1194. The administrative-law judge determined that the state court had dismissed the malicious-prosecution claims, but there was not a final disposition of those claims because Wright Electric preserved the record of those claims for appeal. *Id.* at 1204–05. Accordingly, the administrative-law judge dismissed the allegation that Wright Electric violated the NLRA by bringing the underlying lawsuit. The administrative-law judge also determined that the discovery sought by Wright Electric was valid because many other claims in Wright Electric's complaint remain viable and noted that "[t]here is neither allegation nor argument that any one of those claims 'lack a reasonable basis in fact or law.'" *Id.* at 1205 (citing *Bill Johnson's Rests. v. N.L.R.B.*, 461 U.S. 731, 748, 103 S.Ct. 2161, 2173, 76 L.Ed.2d 277 (1983)). The administrative-law judge dismissed the allegations that Wright Electric violated the NLRA due to its discovery requests. Preemption was not raised by the parties, nor did the judge discuss preemption in its order.

The NLRB reviewed and affirmed the administrative-law judge's determination on the malicious-prosecution portion of the decision, with the modification that the allegation be held in "abeyance until [the administrative-law judge] receives notification that the state court has resolved the matter pending before it [and][a]t that point, the judge can determine ... whether the state court suit lacked merit and, if so, whether it was filed for a retaliatory motive." *Id.* at 1195. But the NLRB reversed the administrative-law judge's determination on the discovery requests. The NLRB found that Wright Electric violated the NLRA because it "failed to state an interest in examining employee authorization cards that outweighs the considerable confidentiality interests of employees who sign cards." *Id.* Preemption was not addressed by the parties or the board.

The Eighth Circuit Court of Appeals affirmed the NLRB's order, noting, "we agree with the [NLRB] that the information Wright Electric seeks is not relevant to its state law claims." *Wright Elec., Inc. v. N.L.R.B.*, 200 F.3d 1162, 1167 (8th Cir. 2000). The Eighth Circuit concluded that the NLRB did not err in enjoining Wright Electric's discovery request because "the discovery request has an illegal objective and has no overriding business justification." *Id.* Preemption was not addressed by the parties or the court.

Thus, there was no direct decision by the administrative-law judge, the NLRB, or the Eighth Circuit Court of Appeals that directly decided whether Wright Electric's claims are preempted by the NLRA. Although all three decision-makers had the *opportunity* to decide whether Wright Electric's claims are preempted by the NLRA; all three decision-makers chose to resolve only those specific issues presented to them. As a result, Wright Electric's argument that the Eighth Circuit and the NLRB effectively rejected the IBEW's preemption claim fails under a collateral-estoppel analysis.

The Minnesota Supreme Court has stated that collateral estoppel may apply, in appropriate instances, to an administrative decision when an agency acts in a judicial or quasi-judicial capacity. *Graham v. Special Sch. Dist. No. 1,* 472 N.W.2d 114, 116 (Minn.1991). The court noted that for collateral estoppel to apply:

1) the issue to be precluded must be identical to the issue raised in the prior agency adjudication;

2) the issue must have been necessary to the agency adjudication and properly before the agency;

3) the agency determination must be a final adjudication subject to judicial review;

4) the estopped party was a party or in privity with a party to the prior agency determination; and

5) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Id.* (citations omitted). Several of the collateral-estoppel factors are met because the NLRB's determination is a final adjudication, which was subjected to judicial review; the estopped parties (IBEW, Ouellette, and Priem) were parties to the prior agency determination; and the estopped parties were given a full and fair opportunity to be heard. *Id.* But, significantly, Wright Electric failed to satisfy the first collateral-estoppel factor because the preemption issue was not raised in any of the prior agency or court adjudications. Therefore, we conclude that appellants' preemption claim was not effectively rejected by the administrative-law judge, the NLRB, or the Eighth Circuit Court of Appeals.

B. General Counsel's Refusal to File a Charge

■ Wright Electric also contends that Ouellette's falsifications are not protected under the NLRA because the regional director and the NLRB's general counsel refused to file a charge against Wright Electric even though Wright Electric admitted that it fired Ouellette because he falsified his application. Appellants assert that the general counsel's decision not to file a charge against Wright Electric cannot be construed as a de facto determination that Wright Electric's claims are not preempted. We agree.

The United States Supreme Court has already decided that the general counsel's refusal to file a charge is not the same as a decision finding a party's claims are not preempted by the NLRA. *See San Diego Bldg. Trades Council,* 359 U.S. at 245–46, 79 S.Ct. at 780. The Supreme Court stated that the NLRB's failure to determine the status of the disputed conduct by declining to assert jurisdiction or the "refusal of the General Counsel to file a charge" does not "leave the States free to regulate activities they would otherwise be precluded from regulating." *Id.* The Supreme Court concluded that

[i]n the absence of the [NLRB's] clear determination that an activity is neither protected nor prohibited or of compelling precedent applied to essentially undisputed facts, it is not for this Court to decide whether such activities are subject to state jurisdiction.... The governing consideration is that to allow the States to control activities that are potentially subject to federal regulation involves too great a danger of conflict with national labor policy.

*Id.* at 246, 79 S.Ct. at 780. Having found no merit to Wright Electric's procedural challenges to appellants' preemption claim, we now address the merits; specifically whether Ouellette's conduct of falsifying his employment application to Wright Electric was an "arguably protected" activity under the NLRA.

## C. "Salting" as an "Arguably Protected Activity"

Appellants argue that, because the NLRA protects a union member's right to misrepresent his employment history in order to conceal his union status when seeking employment in a non-union workplace, Wright Electric's claims are preempted by the NLRA. Wright Electric contends that Ouellette's falsifications are not arguably protected because Ouellette's falsifications do not relate to his union status, but rather, relate to his qualifications for the position with Wright Electric.

As previously stated, when state law seeks to regulate the exercise of rights protected by the NLRA, the NLRA preempts the conflicting provisions of state law by direct operation of the Supremacy Clause. *Brown v. Hotel & Rest. Employees & Bartenders, Local 54,* 468 U.S. 491, 503, 104 S.Ct. 3179, 82 L.Ed.2d 373 (1984). Even if an activity is arguably subject to section 7[3] or section 8[4] of the NLRA, both state and federal courts must defer to the exclusive competence of the NLRB to avoid the danger of state interference with national policy. *Jara v. Buckbee–Mears Co.,* 469 N.W.2d 727, 729 (Minn.App.1991) (citing *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 245, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959)). "The party asserting preemption must show that the alleged activity is arguably protected or prohibited by the NLRA and that the

NLRB reasonably could uphold the party's claim." *Id.* (citing *Int'l Longshoremen's Ass'n v. Davis,* 476 U.S. 380, 395, 106 S.Ct. 1904, 1914, 90 L.Ed.2d 389 (1986)). The United States Supreme Court has addressed and defined "arguably" in deciding when an activity is "arguably protected or prohibited" stating:

> If the word "arguably" is to mean anything, it must mean that the party claiming preemption is required to demonstrate that his case is one that the [NLRB] could legally decide in his favor. That is, a party asserting preemption must advance an interpretation of the Act that is not plainly contrary to its language and that has not been "authoritatively rejected" by the courts or the [NLRB]. The party must then put forth enough evidence to enable the court to find that the [NLRB] reasonably could uphold a claim based on such an interpretation.

> . . . .

> The lack of a[n] [NLRB] decision in no way suggests how it would or could decide the case if it had the opportunity to do so. To accept the Unions submission would be essentially equivalent to allowing a conclusory claim of preemption and would effectively eliminate the necessity to make out an arguable case. The better view is that those claiming preemption must carry the burden of showing at least an arguable case before

**3.** Section 7 of the NLRA provides, in part, "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157 (2002).

**4.** Section 8 of the NLRA provides, in part,

It shall be an unfair labor practice for an employer—

1. to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

. . . .

3. by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization.

29 U.S.C. § 158(a)(1), (3) (2002).

the jurisdiction of a state court will be ousted.

*Int'l Longshoremen's Ass'n,* 476 U.S. at 395–96, 106 S.Ct. at 1914–15. The Supreme Court also noted that "a court first must decide whether there is an arguable case for preemption; if there is, it must defer to the [NLRB], and only if the [NLRB] decides that the conduct is not protected or prohibited may the court entertain the litigation." *Id.* at 397, 106 S.Ct. at 1915–16.

Appellants rely on two decisions in support of its position that the NLRA protects "salts" who conceal their union affiliation when applying for jobs with non-union employers.

In *Winn–Dixie Stores, Inc.,* the NLRB found that an employee who admitted to intentionally falsifying his employment application was discharged because of his prior affiliation with a union. 236 N.L.R.B. 1547, 1547 (1978). The NLRB noted that "[e]ducational background, criminal record, and history of compensation claims are all factors which a potential employer may lawfully take into account in deciding whether to hire an applicant, and hence a discharge for falsification of information on such matters does not itself violate" the NLRA. *Id.* But the NLRB found that the employer's reasons for discharging the employee were pretextual and that the employee was actually discharged due to his prior affiliation with a union. *Id.* In making this finding, the NLRB relied on anti-union comments the employer had made, such as the employee's supervisor stating that the employee is probably correct in thinking that if he had put his union job on his application the employee "probably wouldn't be here," and the supervisor stating that the employer would rather close than "have anything to do with unions." *Id.* at 1547, 1549.

In *Hartman Bros. Heating & Air Conditioning, Inc.,* the Seventh Circuit Court of Appeals found that a "salt" may lie to get a job "if the lie concerns merely his status as a salt, union organizer, or union supporter and not his qualifications for the job." 280 F.3d at 1112. The Seventh Circuit noted that a state statute that makes it a crime for a person to "knowingly or intentionally" make a false or misleading written statement with the intent to obtain employment would be preempted by the NLRA because the state statute would interfere with union-organizing activity without any justification consistent with the NLRA. *Id.* at 1113. The Seventh Circuit reasoned that "a lie related solely to one's union affiliation or unionizing intentions rather than to one's fitness for the job cannot, consistent with the [NLRA] as it [has been] interpreted, be material to the hiring decision." *Id.*

Based on the NLRB and Seventh Circuit decisions, if Ouellette lied on his application to hide his union affiliation and status as a "salt," then Wright Electric's claims are preempted by the NLRA. Therefore, we conclude that the IBEW has advanced an interpretation of the NLRA "that is not plainly contrary to its language and that has not been authoritatively rejected by the courts or the [NLRB]." *Int'l Longshoremen's Ass'n,* 476 U.S. at 395–96, 106 S.Ct. at 1914–15. The remaining issue, then, is whether the IBEW has "put forth enough evidence to enable [this] court to find that the [NLRB] reasonably could uphold a claim based on such an interpretation." *Id.*

We first note that the parties dispute the reason that Ouellette falsified his employment application and the basis for Wright Electric's termination of Ouellette. Appellants contend that Ouellette falsified his application to hide his union affiliation and status as a "salt." According to appel-

lants, had Ouellette disclosed, for example, his employment with the non-union contractor BE & K, Wright Electric would have discovered that he was involved in protected efforts to unionize BE & K. Wright Electric contends that Ouellette's falsification does not relate to his union status, but rather to his qualifications for the position at Wright Electric.[5]

But this court cannot serve as the fact-finder. *Kucera v. Kucera,* 275 Minn. 252, 254, 146 N.W.2d 181, 183 (1966). Thus, it would be inappropriate for this court to review the record in an effort to determine whether Ouellette lied on his application to hide his union affiliation or to hide aspects of his job history that would relate to his qualifications for the job with Wright Electric. Our sole task is to determine whether IBEW has "put forth enough evidence to enable [this] court to find that the [NLRB] reasonably could uphold a claim based on such an interpretation." *Int'l Longshoremen's Ass'n,* 476 U.S. at 395–96, 106 S.Ct. at 1914–15. We believe that appellants have met their burden. Appellants have shown, and Wright Electric admits, that Wright Electric has never been a signatory to any collective-bargaining agreement with any labor organization. The record also shows that Ouellette was fired a few days after supervisors discovered that he had worked for union contractors in the past. Moreover, Ouellette's firing occurred a few days after Priem faxed a letter to Wright Electric and hand-delivered a copy of the letter to Stavrum, informing him that Ouellette was a union member engaged in protected union-orga-nizing activity during his non-working time. In addition, the record indicates that Ouellette's work was satisfactory and that he had not been disciplined until he was fired. From this evidence, appellants have carried their "burden of showing at least an arguable case" that Wright Electronic's claims are preempted by the NLRA because Ouellette was arguably fired due to his union status.

We note, however, that—contrary to appellants' contention—an employee's "qualifications" consist of more than the ability to meet the technical qualifications for the job; in this instance, an electrician's license, some comparable experience, and an insurable driving record. Thus, we find some merit in Wright Electric's counsel's statement at oral argument that IBEW's narrow definition of "qualifications" incorrectly suggests that any warm body with the most basic of skills is "qualified" for a particular job. Moreover, the NLRB has held that "[e]ducational background, criminal record, and history of compensation claims are all factors which a potential employer may lawfully take into account in deciding whether to hire an applicant, and hence a discharge for falsification of information on such matters does not itself violate" the NLRA. *Winn–Dixie Stores, Inc.,* 236 N.L.R.B. at 1547. Similarly, common sense suggests that an employer should also be able to take into account problems or disciplinary measures that a past employer has had with the applicant, if such problems or disciplinary measures do not relate to the applicant's union affiliation. And that is Wright Electric's basic

---

**5.** Wright Electric contends that Ouellette concealed a number of facts that go directly to his qualifications for the position at Wright Electric. Wright Electric contends Ouellette concealed that: (1) he used a former employer's truck to perform a "side job" without a permit, in violation of state law and the employer's policies; (2) he resigned from this same job without notice before the former employer could address the misconduct; (3) he was ineligible for rehire with this former employer; (4) he had been reprimanded and terminated from his employment with a second former employer; and (5) he allegedly intentionally broke light bulbs on a job while working for a third former employer.

argument. Wright Electric thus contends that Ouellette's falsifications went far beyond the lies told by the salts in *Hartman Bros v. Winn–Dixie Stores*.

But therein lies the rub. As the law now stands, an applicant/salt may permissibly falsify his application and thereby hide negative, relevant aspects of his qualifications (even past misconduct), if the past misconduct with non-union employers happened to occur during the same time that the applicant/salt was also engaged in protected union activities. In such cases, we believe a salt has met the minimal burden of demonstrating that falsifying an application by omitting any reference to the employer in question is "arguably protected" under the NLRA. Until the NLRB or the United States Supreme Court addresses this anomaly, the law compels the result that we reach here today.

Because the malicious-prosecution claim is currently being held in abeyance until the administrative-law judge receives notification that this state court matter has been resolved, the NLRB may find, while resolving the malicious-prosecution claim, that Ouellette lied on his application to conceal past job misconduct and that such misconduct reflects on his qualifications for the job with Wright Electric. If the NLRB so finds, Minnesota courts may then entertain this litigation and Wright Electric's claims. *See Int'l Longshoremen's Ass'n*, 476 U.S. at 397, 106 S.Ct. at 1916 (stating if the NLRB decides that the conduct is not protected or prohibited the court may entertain the litigation). Until the NLRB makes such a finding, the district court must defer to the exclusive competence of the NLRB to avoid the danger of state interference with national policy. Thus, the district court erred in finding that it had jurisdiction over Wright Electric's claims.

## DECISION

There was no determination by the administrative-law judge, the NLRB, or the Eighth Circuit Court of Appeals that Wright Electric's claims are preempted by the NLRA because preemption was never raised by the parties or decided by any of the tribunals. In addition, IBEW's preemption claim is not collaterally estopped by the general counsel's decision not to assert that federal law preempts Wright Electric's claims. Finally, IBEW has met its burden of showing that there is an arguable case for preemption under the NLRA, and therefore the district court must defer to the exclusive competence of the NLRB to avoid the danger of state interference with national policy.

Reversed.