**Mary PATTON, et al., Appellants,**

v.

**NEWMAR CORPORATION, Respondent.**

**No. C8-93-2546.**

Court of Appeals of Minnesota.

July 26, 1994.

Review Granted Sept. 28, 1994.

William O. Bongard, Wilbur W. Fluegel, Sieben, Grose, Von Holtum, McCoy & Carey, Ltd., Minneapolis, for appellants.

Stephen J. Foley, Bryan K. McKamey, Foley & Mansfield, Minneapolis, for respondent.

## OPINION

FORSBERG, Judge.

Respondent Newmar Corporation moved for summary judgment and the exclusion of Mary and Richard Patton's expert witness's testimony because the Pattons and their agents failed to preserve the remains of the motor home they allege was defectively designed. The district court sanctioned the Pattons by completely excluding their expert witness's testimony and then granting summary judgment in favor of Newmar. We reverse and remand.

## FACTS

The Pattons purchased their Kountry Aire motor home in 1985 and used it both for business and personal purposes. The motor home was manufactured by respondent Newmar Corporation and was equipped with a dual fuel system, designed to run on either gasoline or propane. It is undisputed that, after purchasing the motor home, the Pattons made two major repairs: in October 1986, the Pattons replaced the entire engine block, and in October 1987, the Pattons rebuilt the motor home's transmission.

In March 1988, the Pattons were traveling on a California interstate highway when they heard a loud "pop" noise they later described as similar to that of a blown tire. Mr. Patton saw flames coming from the engine compartment near the gas and brake pedals and stopped the vehicle. Mrs. Patton allegedly tripped and injured her back while exiting the motor home to escape the fire.

The remains of the motor home were towed to a salvage yard in Arizona. By July 1988, the Pattons had hired an attorney and an expert engineer, Daniel Buchaniec, who examined the remains of the motor home in October 1988. Buchaniec removed certain unidentified parts from the motor home's remains during his inspection and took photographs. In 1992, after Newmar requested an inspection of the remains of the motor home, the company was notified that the motor home was no longer at the salvage yard and that neither the yard nor Pattons' counsel knew what had happened to it. Newmar then moved for summary judgment.

At the summary judgment hearing, the Pattons' counsel admitted for the first time that Buchaniec could not locate the parts he removed from the motor home. Newmar asserted that it did not have an opportunity to examine or test either the motor home or any of its component parts to ascertain the cause of the fire. Newmar argued that it therefore was prejudiced because it had lost the defense that the fire was caused by one or a combination of the Pattons' later repairs on the motor home.

Newmar admitted that the Pattons' motor home was equipped with a dual fuel system that was designed and supplied by Promatic Corporation (which is no longer in business). The Pattons deposed the former president of Promatic Corporation, Douglas Tillman, who confirmed that his company supplied dual fuel systems to Newmar. Tillman further stated that his company supplied virtually identical fuel systems to Holiday Rambler, another manufacturer of motor homes.

Although Tillman was unaware of any recalls on the dual fuel system designed by Promatic, the Pattons' attorney later produced evidence that Holiday Rambler had recalled its motor homes and changed them

from dual fuel systems to single, gasoline systems. The recall was prompted by Holiday Rambler's analysis of fire reports in which the dual fuel system could not be eliminated as a possible source of a fuel leak.

The district court found that the Pattons' and their agents' failure to preserve the motor home prejudiced Newmar because the company could not inspect and perform tests on the motor home's remains. The court found that the Pattons knew or should have known that the remains of the mobile home were important and relevant evidence, which should have been preserved, and concluded that it would not admit the testimony or evidence gathered by the Pattons' expert because of the prejudice to Newmar. Finally, the court concluded that outright dismissal was the appropriate sanction because the Pattons could not establish a prima facie case without their expert's testimony.

## ISSUES

I. Does the district court have authority to sanction a party for the destruction or spoliation of evidence in the absence of a violation of a court order or a finding of bad faith?

II. Did the district court abuse its discretion by completely excluding the Pattons' expert's testimony as a sanction based on the Pattons' failure to preserve the motor home?

III. Did the district court abuse its discretion by granting summary judgment in favor of Newmar Corporation and dismissing the case based on the Pattons' failure to preserve the motor home?

## ANALYSIS

### I.

 Generally, sanctions exist to further two goals: to penalize those whose conduct is deemed to warrant a sanction and to deter others who may be tempted to behave in such a way as to warrant the imposition of sanctions in the future. *Bachmeier v. Wallwork Truck Centers,* 507 N.W.2d 527, 533 (N.D.1993). It is well settled that Minnesota courts may sanction a party for violating a discovery order, and that the choice of a sanction for a party's failure to comply with a discovery order is a matter within the district court's discretion. Minn.R.Civ.P. 37; *Bowman v. Bowman,* 493 N.W.2d 141, 145 (Minn. App.1992); *Przymus v. Commissioner of Pub. Safety,* 488 N.W.2d 829, 832 (Minn.App. 1992), *pet. for rev. denied* (Minn. Sept. 15, 1992). The court may order sanctions including: excluding evidence and testimony; striking pleadings; assessing expenses and attorney fees; and dismissing the case. Minn.R.Civ.P. 37.02.

Here, however, the district court excluded evidence and granted summary judgment based on its inherent powers for spoliation of evidence,[1] rather than based on the violation of a court order. While several other jurisdictions have addressed the exclusion of testimony in civil actions based on the spoliation of evidence under a court's inherent authority, this is an issue of first impression in Minnesota; the doctrine has been applied only in criminal cases thus far in Minnesota.[2]

We note that the Minnesota Supreme Court has stated that the inherent judicial power of the state's courts may be invoked to meet "the practical necessity of ensuring the free and full exercise of the court's vital function—the disposition of individual cases to deliver remedies for wrongs and justice." *County of Ramsey v. Stevens,* 283 N.W.2d 918, 925 (Minn.1979) (citing *In re Clerk of Lyon County Courts,* 308 Minn. 172, 177, 241 N.W.2d 781, 784 (1976)).

 Based on the supreme court's acknowledgement of the district court's inherent judicial power, we conclude that the courts may sanction a party for the spoliation

---

1. Spoliation is the destruction of evidence or the failure to preserve property for another's use as evidence, and may constitute an obstruction of justice. *See Federated Mut. Ins. v. Litchfield Precision Components, Inc.,* 456 N.W.2d 434, 436 (Minn.1990).

2. *See, e.g., State v. Koehler,* 312 N.W.2d 108, 109–10 (Minn.1981); *State v. Nelson,* 399 N.W.2d 629, 633 (Minn.App.1987), *pet. for rev. denied* (Minn. April 17, 1987); *State v. Trimble,* 371 N.W.2d 921, 925 (Minn.App.1985), *pet. for rev. denied* (Minn. Oct. 11, 1985); *Bielejeski v. Commissioner of Pub. Safety,* 351 N.W.2d 664, 667 (Minn.App.1984).

of evidence, even where that party is not otherwise in violation of a court order, and where there has been no finding of bad faith. This power is analogous to the unfavorable inference that may be drawn from a party's failure to produce evidence in its possession and under its control.[3]

We note that several other jurisdictions have examined the court's inherent authority to impose sanctions based on destruction of evidence in civil cases. In *Capellupo v. FMC Corp.*, 126 F.R.D. 545, 550 (D.Minn.1989), the court stated that:

> It is axiomatic that the imposition of sanctions for destruction of documents is within the trial court's discretion. In matters such as this—which lie beyond the scope of Rule 37, Federal Rules of Civil Procedure * * *—the Court relies on its inherent power to regulate litigation, preserve and protect the integrity of proceedings before it, and sanction parties for abusive practices.

*Id.,* (citations omitted).

■ The courts consider a variety of factors when reviewing an imposition of sanctions based on a court's inherent powers, including (1) the degree of fault or willfulness of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future; (4) whether any evidence has been irreparably lost; (5) the policy favoring adjudication on the merits; and (6) whether sanctions unfairly operate to penalize a party for the misconduct of his or her attorney. *See Bachmeier,* 507 N.W.2d at 534; *Dillon v. Nissan Motor Co.,* 986 F.2d 263, 267–68 (8th Cir.1993); *Nevada Power v. Fluor Illinois,* 108 Nev. 638, 837 P.2d 1354,

1359 (1992); *Schmid v. Milwaukee Elec. Tool Corp.,* 13 F.3d 76, 79 (3d Cir.1994); *Stubli v. Big D Int'l Trucks, Inc.,* 107 Nev. 309, 810 P.2d 785, 787 (1991).[4]

■ Here, the parties focus on whether the court's power to sanction is dependent on a finding of bad faith. We conclude that although Minn.Stat. § 549.21 and rule 11 sanctions are necessarily based on bad faith, *see Uselman v. Uselman,* 464 N.W.2d 130, 140–41 (Minn.1990); *Fairbo Oil Co. v. Tatge Oil Co.,* 501 N.W.2d 699, 702 (Minn.App. 1993), *pet. for rev. denied* (Minn. Aug. 24, 1993), bad faith or the degree of willfulness of the party who altered or destroyed evidence is only one of several factors to consider when determining the appropriateness of the district court's sanction based on its inherent powers. *See Dillon,* 986 F.2d at 267–68; *Bachmeier,* 507 N.W.2d at 534; *Computer Assocs. Int'l, Inc. v. American Fundware, Inc.,* 133 F.R.D. 166, 169 (D.Col.1990); *Stubli,* 810 P.2d at 788; *Schmid,* 13 F.3d at 79.

Accordingly, we conclude that the district court may sanction a party for spoliation of evidence even where there has been no violation of a court order and there has been no finding of bad faith.

**II.**

■ While we have concluded that the district court may sanction a party in the absence of bad faith or violation of a court order, we specifically note that the district court has "a duty to impose the least restrictive sanction available under the circumstances." *Bachmeier,* 507 N.W.2d at 533. As other appellate courts, we review the imposition of sanctions based on the court's inherent power to determine whether the court abused its discretion. *See Dillon,* 986 F.2d at 267; *Bachmeier,* 507 N.W.2d at 533; *American Family Ins. Co. v. Village Pontiac*

---

**3.** *See Federated,* 456 N.W.2d at 436–37. If a party does not produce evidence at trial, the jury may infer that the evidence, if produced, would have been unfavorable to that party. *Id.; see generally* 31A C.J.S. *Evidence* § 152–53 (Supp. 1993).

**4.** We note that when determining whether to dismiss an action based on spoliation of evidence

in the criminal context, Minnesota courts have considered factors including the possible exculpatory value of the evidence, the strength of the state's case without the evidence, and whether the destruction was intentional. *See Koehler,* 312 N.W.2d at 109–10: *Nelson,* 399 N.W.2d at 633; *Trimble,* 371 N.W.2d at 925; *Bielejeski,* 351 N.W.2d at 667.

*GMC, Inc.*, 223 Ill.App.3d 624, 166 Ill.Dec. 93, 96, 585 N.E.2d 1115, 1118 (1992).

██ On appeal, the Pattons argue that the district court abused its discretion by excluding their expert witness's testimony. While we agree that a sanction is appropriate in this case, we conclude that the district court's complete exclusion of the expert's testimony is excessive. A more appropriate, less restrictive sanction available to the court is to exclude only that portion of the expert's testimony that was derived from his inspection of the motor home. Thus, while the photographs of the motor home would be admissible, the expert's testimony would be limited only to what can be ascertained from those photographs, or other evidence, but not evidence from the inspection of the motor home itself. We reverse the district court on this issue, and direct the court to exclude only that portion of the expert's testimony derived from the actual inspection of the motor home's remains.

### III.

██ We next address whether the district court abused its discretion by granting summary judgment in favor of Newmar as a sanction for the negligent spoliation of evidence. As noted previously, the district court has "a duty to impose the least restrictive sanction available under the circumstances." *Bachmeier*, 507 N.W.2d at 533. Because dismissal is "an extreme measure, reserved only for the most egregious offenses against an opposing party or a court," *Capellupo*, 126 F.R.D. at 552; *see Bachmeier*, 507 N.W.2d at 533, we conclude that the district court abused its discretion by granting summary judgment and dismissing the Pattons' claim.

The dismissal of the claim is excessive in this case because although the evidence has been irretrievably lost, and there is prejudice to Newmar, the district court did not find bad faith or willful destruction of the evidence by the Pattons or their agents, and because the exclusion of the Pattons' expert's testimony regarding his inspection of the motor home itself sufficiently remedies the prejudice to Newmar.

Finally, we note that the Pattons have presented sufficient evidence to raise a material issue of fact regarding Newmar's liability. *See Hudson v. Snyder Body, Inc.*, 326 N.W.2d 149, 155 (Minn.1982). This evidence includes the photographs taken by Buchaniec, diagrams and blueprints of the dual fuel system, and the recall letter by Holiday Rambler. Thus, even under a rule 56 motion for summary judgment analysis, the case properly should be remanded for trial.

### DECISION

**Reversed and remanded.**