Michael D. FRAZIER, as Trustee for the Next–of–Kin of Brian L. Frazier, deceased, Respondent (A09–2212),

Harry James Rhoades, Sr., as Trustee for the Next–of–Kin of Harry James Rhoades, Jr., deceased, Respondent (A09–2213),

Denise Renee Shannon, as Trustee for the Next–of–Kin of Bridgette Marie Shannon, deceased, Respondent (A09–2214),

Elizabeth Chase, as Trustee for the Next–of–Kin of Corey Everett Chase, deceased, Respondent (A09–2215),

v.

BURLINGTON NORTHERN SANTA FE CORPORATION, et al., Appellants,

Richard P. Wright, as Special Administrator of the Estate of Corey E. Chase, deceased, Respondent (A09–2212),

Cristy Y. Frazier, as Special Administrator for the Estate of Brian Frazier, deceased, Respondent (A09–2213, A09–2214, A09–2215),

and

BNSF Railway Company, third party plaintiff, Appellant (A09–2213, A09–2214, A09–2215),

v.

Richard P. Wright, as Special Administrator for the Estate of Corey Everett Chase, deceased, third party defendant, Respondent (A09–2213, A09–2214, A09–2215).

Nos. A09–2212, A09–2213, A09–2214, A09–2215.

Court of Appeals of Minnesota.

Sept. 14, 2010.

Robert L. Pottroff (pro hac vice), Pottroff Law Office, P.A., Manhatttan, KS; and Mark R. Bradford, Patrick J. Sauter, Bassford Remele, P.A., Minneapolis, MN, for respondents, Michael Frazier and Cristy Frazier.

William O. Bongard, Sieben, Grose, Von Holtum & Carey, Ltd., Minneapolis, MN, for respondent, Harry James Rhoades Sr.

Allan F. Shapiro, Finn Shapiro, St. Louis Park, MN, for respondent, Denise Renee Shannon.

Sharon L. Van Dyck, St. Louis Park, MN; and Paul E. Godlewski, Schwebel, Goetz & Sieben, Minneapolis, MN, for respondent, Elizabeth Chase.

Timothy R. Thornton, Sam Hanson, Jonathan P. Schmidt, Tara Reese Duginske, Briggs & Morgan, P.A., Minneapolis, MN, for appellants.

Burke J. Ellingson, Brendel & Zinn, Lake Elmo, MN, for respondent, Richard Wright.

Considered and decided by
KALITOWSKI, Presiding Judge;
MINGE, Judge; and COLLINS, Judge.

## OPINION

COLLINS, Judge.*

Respondents, the trustees for the next of kin of four individuals killed when a train collided with their car, brought these actions against appellants, the company that owned and operated the train and its parent corporation. The actions were consolidated and the trial was bifurcated. At the close of evidence in the liability trial, appellants moved for judgment as a matter of law (JMOL) on the ground of preemption, and the district court denied the motion. The jury found that appellants had been negligent and attributed 90 percent of the causal fault for the accident to appellants. Following the trial on damages, the jury found that each respondent was entitled to damages. Respondents moved for conduct-based sanctions against appellants on various grounds, and the district court granted the motion in part. Appellants moved unsuccessfully for (1) JMOL or a new trial on liability on the ground of preemption, (2) a new trial on liability on grounds of newly discovered evidence and

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

various alleged trial errors, and (3) a new trial on damages or remittitur. Appellants challenge the district court's denial of these motions and the sanctions award.

Because we conclude that appellants are not entitled to JMOL on the ground of preemption but are entitled to a new liability trial on the basis of an error of fundamental law in the jury instruction relative to preemption, we affirm the denial of JMOL but reverse and remand for a new trial on liability. Because the district court did not abuse its discretion in denying the motion for a new trial on damages or for remittitur, we affirm in part. Because the district court did not abuse its discretion in awarding sanctions, we affirm in part, but we remand those sanctions calculated as a percentage of appellants' liability for possible recalculation after the new liability trial. Finally, because granting a new liability trial renders moot the district court's denials of new-trial motions based on newly discovered evidence and alleged trial errors, we decline to address these issues.

## FACTS

On September 26, 2003, shortly after 10 p.m., a southbound car containing Corey Chase, 20, Brian Frazier, 20, Harry Rhodes, 19, and Bridgette Shannon, 17, was struck at a railway crossing by a westbound freight train operated by appellant Burlington Northern Santa Fe Railway Company, a wholly owned subsidiary of appellant Burlington Northern Santa Fe Corporation (collectively, BNSF). The car's four occupants were killed. Respondents, trustees for the decedents' next of kin, brought actions against BNSF.

The liability trial began on May 8, 2008. The only witnesses to the accident who testified were BNSF employees, one of whom testified that, when the train moved through the crossing, he saw signal lights flashing and the crossing gate down. Respondents' own expert testified that he had no basis to dispute that the track inspections required by the Federal Railroad Administration (FRA) were done in a timely fashion or that the required signal tests were all done according to FRA requirements; he also testified that he agreed that BNSF did the required monthly and quarterly signal inspections. Relying on circumstantial evidence, respondents contended that the signal lights were not flashing, the gates were not down, and nothing warned motorists of the approaching train. On June 10, 2008, the jury delivered its verdict attributing 90 percent of the causal negligence to BNSF and 10 percent to the driver of the car. The trial on damages began the next day, and on June 13, 2008, the jury returned its verdicts awarding $6,000,000 to the next of kin of each decedent.

After hearings on respondents' motions for sanctions against BNSF and BNSF's posttrial motions, the district court denied BNSF's motions and granted respondents' motions in part, awarding respondents $4,180,398.90 in sanctions against BNSF for specified instances of misconduct. This appeal followed.

## ISSUES

1. Is BNSF entitled to JMOL on the ground of preemption?

2. Is BNSF entitled to a new liability trial on the basis of an error of fundamental law in the jury instruction relative to preemption?

3. Did the district court abuse its discretion in denying BNSF's motion for a new damages trial or remittitur?

4. Did the district court abuse its discretion in granting in part respondents' motion for sanctions against BNSF?

## ANALYSIS

### 1. JMOL on the ground of preemption[1]

 Whether federal law preempts state law is subject to de novo review. *In re Estate of Barg,* 752 N.W.2d 52, 63 (Minn.2008); *In re Speed Limit for Union Pac. R.R.,* 610 N.W.2d 677, 682 (Minn.App. 2000), *review dismissed* (Minn. July 7, 2000). At the close of evidence and again after the trial, BNSF moved for JMOL on the ground that the Federal Railroad Safety Act (FRSA), 49 U.S.C. §§ 20101–21311 (2006 & Supp. II 2008), preempted respondents' state common-law claims. Appellate courts "apply de novo review to the district court's denial of a Rule 50 [i.e., JMOL] motion." *Bahr v. Boise Cascade Corp.,* 766 N.W.2d 910, 919 (Minn.2009).

The FRSA provides, "Laws, regulations, and orders related to railroad safety ... shall be nationally uniform to the extent practicable." 49 U.S.C. § 20106(a)(1) (Supp. II 2008). FRA regulations cover the track, signals, and all other aspects of railway crossings. *See* 49 C.F.R. §§ 234.201–.274 (2009). "Under 49 U.S.C. § 20106 ... issuance of these regulations preempts any State law, rule, regulation, order, or standard covering the same subject matter...." 49 C.F.R. § 234.4 (2009).

The Supreme Court has twice concluded that federal regulations concerning railroad crossings preempt state laws and common-law standards. "According to [45 U.S.C.] § 434 [predecessor of 49 U.S.C. § 20106], applicable federal regulations may pre-empt any state law, rule, regulation, order, or standard relating to railroad safety. Legal duties imposed on railroads by the common law fall within the scope of these broad phrases." *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 664, 113 S.Ct. 1732, 1737, 123 L.Ed.2d 387 (1993) (quotation omitted). The pertinent federal regulations "cover the subject matter of state law which, like the tort law on which [the decedent's representative] relies, seeks to impose an independent duty on a railroad to identify and/or repair dangerous crossings." *Id.* at 671, 113 S.Ct. at 1741.[2]

In another crossing-accident case, the Supreme Court again concluded that

> the FRSA pre-empts [the decedent's representative]'s state tort claim that the advance warning signs and reflectorized crossbucks installed at the ... crossing were inadequate.... Once ... the signs were installed using federal funds, the federal standard for adequacy displaced [state] statutory and common law addressing the same subject, thereby pre-empting [the decedent's representative's] claim.

*Norfolk S. Ry. Co. v. Shanklin,* 529 U.S. 344, 358–59, 120 S.Ct. 1467, 1477, 146 L.Ed.2d 374 (2000).

Respondents rely on 49 U.S.C. § 20106 (Supp. II 2008), which provides:

---

1. As a threshold matter, respondents argue, and the district court agreed, that BNSF waived its right to assert preemption because it did not do so in a timely manner but waited until its motion for JMOL at the close of evidence. But BNSF in its answer asserted as an affirmative defense "that any and all of plaintiff's claims with respect to traffic control devices are preempted by federal law." The complaint alleged negligence on the part of BNSF regarding the operation of the crossing gate. Crossing gates are "traffic control devices" intended to keep traffic off the tracks when a train is approaching. Thus, BNSF did plead preemption in its answer, and the district court's finding to the contrary is clearly erroneous.

2. Ultimately, federal regulations did not apply in *CSX* because federal funds had not been used to install the warning devices and, although a crossing gate had been planned for, it had not been installed. 507 U.S. at 672–73, 113 S.Ct. at 1741–42.

(b) Clarification regarding State law causes of action. (1) Nothing in this section shall be construed to preempt an action under State law seeking damages for personal injury, death, or property damage alleging that a party

(A) has failed to comply with the Federal standard of care established by a regulation or order ... covering the subject matter as provided in subsection (a) of this section;

(B) has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order ...; or

(C) has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2) [providing that a state may have an additional or more stringent law related to railroad safety only if that law is necessary to eliminate or reduce an essentially local hazard, is not incompatible with a federal law or regulation, and does not unreasonably burden interstate commerce].

Respondents argue that this language, added in 2007, significantly changed 49 U.S.C. § 20106. This argument has not been considered by the Eighth Circuit, but it was explicitly rejected in *Henning v. Union Pac. R.R.*, 530 F.3d 1206, 1214–15 (10th Cir.2008). The court in *Henning* explained that the "clarification" amendment was added in 2007 in response to *Lundeen v. Can. Pac. Ry. Co.*, 507 F.Supp.2d 1006 (D.Minn.2007), and *Mehl v. Can. Pac. Ry. Ltd.*, 417 F.Supp.2d 1104 (D.N.D.2006), in which district courts had concluded that the FRSA preempted state-law claims of plaintiffs who were injured when a derailment released anhydrous ammonia, although plaintiffs alleged the railroad's failure to comply with both federal

regulations (*Mehl*) and its own internal policies (*Lundeen*). *Henning*, 530 F.3d at 1214–15. With the 2007 amendment,

> Congress ... provided clarification for courts interpreting *Shanklin*, establishing FRSA preemption does not apply when a railroad violates a federal safety standard of care. This interpretation is supported by the legislative history of the clarification amendment. The Conference Report states the "restructuring is not intended to indicate any substantive change in the meaning of the provision." H.R.Rep. No. 110–259, at 351, 120 Cong. Rec. H8589 (2007), U.S.Code Cong. & Admin. News 2007, pp. 119, 119. The provision was intended to "clarify the intent and interpretations of the *existing preemption statute* and to rectify the Federal court decisions related to the Minot, North Dakota accident [i.e., *Lundeen* and *Mehl*] that are in conflict with precedent." *Id.* (emphasis added). Further, the amendment is labeled as a "clarification" which indicates Congress sought to resolve an ambiguity rather than effect a substantive change. *See, e.g., Brown v. Thompson*, 374 F.3d 253, 259 (4th Cir.2004) (explaining that Congress often amends laws to "clarify existing law, to correct a misinterpretation, or to overrule wrongly decided cases" (quotation omitted)).

*Id.* at 1216; *see also* 75 Fed.Reg. 5, 1208–09 (Jan. 8, 2010) (noting that "The amendment to Section 20106 ... did not change the text the Supreme Court has interpreted [in *Shanklin*]" and that "The key concept of Section 20106(b) is permitting actions under State law seeking damages for personal injury, death, or property damage to proceed using a Federal standard of care.").[3]

---

**3.** On June 28, 2010, after oral argument in this case, the FRA issued its final rule in which it eliminated 49 C.F.R. § 234.4. "FRA now believes that this section is unnecessary

Thus, BNSF was not entitled to JMOL on the ground of preemption because, providing that the federal standard of care was used, respondents were entitled to proceed with their action. We affirm the district court's denial of JMOL.

## 2. New liability trial on basis of error of fundamental law in jury instruction relative to preemption

■ Both BNSF and respondents proposed, and the jury heard, CIVJIG 25.10 (defining "reasonable care" and "negligence"),[4] CIVJIG 25.12 (explaining right to assume reasonable care),[5] and CIVJIG 25.55 (explaining that fact of accident is not proof of negligence).[6] Respondents, but not BNSF, also proposed, and the jury heard, CIVJIG 25.45 (legal duties)[7] and CIVJIG 25.46 (explaining, in terms of this case, that evidence of BNSF's compliance with its statutory legal duty was not proof that it had exercised reasonable care).[8]

■ Thus, the jury was instructed to apply the common-law negligence or "reasonable person" standard of care, not the federal standard of care. Moreover, the jury was explicitly told that BNSF's *compliance* with the federal standard of care was *not conclusive proof* under the common-law standard.[9] The special verdict

---

because 49 U.S.C. § 20106 sufficiently addresses the preemptive effect of FRA's regulations. Providing a separate Federal regulatory provision concerning the regulation's preemptive effect is duplicative and unnecessary." 75 Fed.Reg. 123, 36552 (June 28, 2010).

**4.** CIVJIG 25.10:

**Definition of "reasonable care"**
Reasonable care is the care a reasonable person would use in the same or similar circumstances.

**Definition of "negligence"**
Negligence is the failure to use reasonable care.
Ask yourself what a reasonable person would have done in these circumstances. Negligence occurs when a person:
1. Does something a reasonable person would not do; or
2. Fails to do something a reasonable person would do.
4 *Minnesota Practice,* CIVJIG 25.10 (2006).

**5.** CIVJIG 25.12:

**Right to assume reasonable care**
A person is entitled to assume that others will use reasonable care.
A person is also entitled to assume that others will obey the law.
However, a person is only entitled to assume that others will use reasonable care or will obey the law until it reasonably appears that they will not.
4 *Minnesota Practice,* CIVJIG 25.12 (2006).

**6.** CIVJIG 25.55:

The fact that an accident has happened does not by itself mean that someone was negligent.
4 *Minnesota Practice,* CIVJIG 25.55 (2006).

**7.** CIVJIG 25.45:

**Legal Duties**
I will read some laws to you.
If I read a law [that] does not automatically mean that this law has been broken. The decision [about whether the law was broken] is up to you.
4 *Minnesota Practice,* CIVJIG 25.45 (2006).
This was followed by a reading of several pages of 49 C.F.R. § 234.

**8.** CIVJIG 25.46:

**Compliance with legal duty**
There is evidence in this case that [defendant BNSF] followed a legal duty written into law as a statute.
It is not conclusive proof of reasonable care if you find that [BNSF] followed such a legal duty.
It is only evidence of reasonable care.
Consider this evidence along with all the other evidence when you decide if reasonable care was used.
4 *Minnesota Practice,* CIVJIG 25.46 (2006).

**9.** Respondents proposed the jury instruction that "[t]here is evidence in this case that defendant BNSF followed a legal duty written into law as a statute," i.e., that BNSF complied with the FRA regulations in 49 C.F.R. §§ 234.201–.274 that cover the track, signals,

form, in accordance with this instruction, asked the jury only if BNSF had been negligent, not whether BNSF had complied with the applicable federal standard. Both the jury instructions and the special verdict form were clearly inconsistent with controlling law, and they conveyed this error of fundamental law to the jury.

■■■■ BNSF moved for a new trial on the ground that the jury had been erroneously instructed on preemption. The district court concluded that "[respondents'] claims are not preempted by federal law" and denied the motion. When the decision to grant or deny a new trial is based on an error of law, the standard of review is de novo. *Halla Nursery, Inc., v. Baumann–Furrie & Co.*, 454 N.W.2d 905, 910 (Minn. 1990).

> [A] court errs if it gives a jury instruction that materially misstates the law. Such an error does not necessitate a new trial unless the error was prejudicial. A jury instruction is prejudicial if a more accurate instruction would have changed the outcome in the case. If the effect of the erroneous instruction cannot be determined, we will give the complainant the benefit of the doubt by granting a new trial.

*George v. Estate of Baker*, 724 N.W.2d 1, 10 (Minn.2006) (citations omitted). In *George*, as here, the jury was given an incorrect instruction on the standard of care. *Id.* at 5. "Because it is analytically

and practically possible that the erroneous standard of care instruction affected the jury's causation analysis, we hold that the . . . instruction was reversible error and remand the case for a new trial on . . . liability." *Id.* at 11. "A trial court has broad discretion in instructing a jury *as long as the law of the case is fully, fairly, and correctly stated.*" *Willmar Poultry Co. v. Carus Chem. Co.*, 378 N.W.2d 830, 836 (Minn.App.1985) (emphasis added), *review denied* (Minn. Feb. 14, 19, 1986). But "[a]n instruction that is so misleading that it renders incorrect the instruction as a whole will be reversible error." *Hilligoss v. Cargill, Inc.*, 649 N.W.2d 142, 147–48 (Minn.2002) (concluding that jury instruction, considered as a whole, was not error because "in the context of employment terminations, 'good cause,' 'just cause,' and 'cause' are interchangeable").

Respondents misstate BNSF's argument, contending "BNSF argues that the combination of the standard reasonable care instruction, CIVJIG 25.10, and the standard instruction for the violation of a statute, CIVJIG 25.45, modified to refer to the federal regulations, was reversible error." But the instruction to which BNSF most strongly objected, both in its motion for a new trial and on appeal, is CIVJIG 25.46, stating that evidence of BNSF's compliance with its legal duty to follow federal regulations was merely evidence,

and other aspects of railway crossings. Respondents now argue that BNSF did not comply with the federal standard of care, despite the fact that evidence of BNSF's compliance with FRA regulations had been provided by respondents' own expert. Whether BNSF complied with the federal standard is a question of fact for a jury. *See Bimberg v. N. Pac. Ry. Co.*, 217 Minn. 187, 194, 14 N.W.2d 410, 414 (1944) (holding that "[w]hether the standard of care which should have been exercised was actually exercised is a question of fact to be determined by the jury. . . ."). The

jury never determined whether BNSF complied with the federal standard because it was never asked that question, and a determination of BNSF's compliance is outside the scope of this court's review. *See Wright Elec., Inc. v. Ouellette*, 686 N.W.2d 313, 324 (Minn. App.2004) (stating that "this court cannot serve as the fact-finder"), *review denied* (Minn. Dec. 14, 2004). The question of BNSF's compliance with the federal standard, essential to a determination of BNSF's liability, may be resolved only by a properly instructed jury after a new trial.

and not conclusive proof, of reasonable care.

■ Respondents argue that BNSF was not entitled to challenge the jury instructions in its motion for a new trial and is not entitled to challenge them on appeal because BNSF did not object to the instructions at trial. But "the duty or degree of care imposed on a party is fundamental law and objections to instructions relative thereto [can] be assigned for the first time in a motion for a new trial." *Lindstrom v. Yellow Taxi Co.*, 298 Minn. 224, 228, 214 N.W.2d 672, 676 (1974); *see also Lewis v. Equitable Life Assurance Soc'y*, 389 N.W.2d 876, 885 (Minn.1986) ("Fundamental errors of law in jury instructions are reviewable on appeal so long as they have been assigned as errors in the motion for new trial."). BNSF assigned the jury instructions on the standard of care as errors in its motion for a new trial.

Respondents also argue that BNSF may not challenge the jury instructions because it proposed them.[10] But BNSF did not propose the instruction to which it most strongly objects: CIVJIG 25.46, erroneously stating that BNSF's compliance with its legal duty was not conclusive proof of reasonable care. That instruction was proposed only by respondents. Thus, BNSF is not precluded from challenging CIVJIG 25.46 on the basis of having proposed it.

Moreover, BNSF is not precluded from challenging even the instructions it did propose: CIVJIG 25.10, defining "reasonable care" and "negligence," CIVJIG 25.12, on the right to assume reasonable care, and CIVJIG 25.55, stating that an accident is not proof of negligence. This issue was addressed in *Mjos v. Vill. of Howard Lake*, 287 Minn. 427, 178 N.W.2d 862 (1970). *Mjos* was brought by the children of a man who was killed in an accident caused by an intoxicated driver against the two municipal liquor stores where the driver had purchased liquor. 287 Minn. at 428–29, 178 N.W.2d at 864. The jury found for the liquor stores, and the plaintiffs moved for a new trial. *Id.* at 429–30, 178 N.W.2d at 865. The district court vacated the judgment and granted the plaintiffs' motion for a new trial " 'on the exclusive grounds of error in the [jury] instructions with respect to fundamental law.' " *Id.* at 428, 178 N.W.2d at 864 (quoting the district court). The liquor stores appealed; the supreme court affirmed.

It is apparent that experienced counsel for both parties and the trial court were unaware of the 1967 changes in the Civil Damage Act [eliminating the "obviously intoxicated" requirement] which

10. Respondents rely on *Heise v. J.R. Clark Co.*, 245 Minn. 179, 191, 71 N.W.2d 818, 826 (1955) ("A party is concluded by an instruction given at his own request.... [T]he trial court's charge, even though it be erroneous, becomes the law of the case...."); *Lee v. Wilson*, 167 Minn. 248, 250, 208 N.W. 803, 804 (1926) ("[I]t appears affirmatively that the cause was submitted [to the jury] in this manner and under this rule at plaintiff's instance. Consequently the charge, whether right or wrong, is the law of the case so far as plaintiff is concerned."); and *McAlpine v. Fid. & Cas. Co.*, 134 Minn. 192, 199, 158 N.W. 967, 970 (1916) ("The settled general rule is that a party cannot avail himself of invited error."). Respondent's reliance is misplaced; all three cases are distinguishable. In *Heise* and in *Lee*, the jury instructions were not challenged on appeal; the issue was whether the evidence supported the jury's findings. *See Heise*, 245 Minn. at 190, 71 N.W.2d at 825; *Lee*, 167 Minn. at 250, 208 N.W. at 804. *McAlpine* noted that, "conceding the right of the court to review, in a special case, the correctness of an instruction at the instance of a party who has procured it to be given, a new trial should not be granted *unless the charge was substantially wrong and apparently prejudicial in result.*" 134 Minn. at 199, 158 N.W. at 970 (emphasis added).

are pertinent to this action. Suit was brought on the theory that any sale of intoxicating liquor to [the driver] by the defendant municipalities was illegal only if he was already 'obviously intoxicated'; *counsel for plaintiffs requested jury instructions* in accordance with that theory; and no objection to the instructions on this point was made either at trial or in the usual post-trial motions. The trial court and counsel for defendants acquiesced in trial and submission of the case to the jury under the standard of obvious intoxication. *Counsel for plaintiffs predicated their second motion for judgment n.o.v. or a new trial on the theory that the instructions were erroneous* because not in accord with the 1967 amendment, and the trial court granted a new trial.

Although it was error to instruct the jury that sales of intoxicating liquors to [the driver] by defendant villages were illegal only if he was then 'obviously' intoxicated, a retrial of this case would be justified only if the instructions as given were highly prejudicial to plaintiffs' cause of action.... [T]he error of law in this case was so fundamental as to have a potentially determinative influence upon the lawsuit.... It is possible that use of the correct standard of intoxication could have been of critical importance....

... [T]he use of these instructions, in the circumstances of this case, constituted such a fundamental error of law and was so highly prejudicial to plaintiffs' cause of action as to require a new trial.

*Id.* at 435–37, 178 N.W.2d at 868–69 (emphasis added) (footnotes omitted). As far as the instructions BNSF did propose, *Mjos* resembles this case: (1) the party seeking a new trial on the basis of an erroneous jury instruction had previously requested the instruction; (2) the parties

and the district court had acquiesced in the instruction; (3) the instruction was an erroneous statement of fundamental law; and (4) the instruction was "potentially determinative" of the lawsuit. *Id.*

In 1970, when *Mjos* was decided, rule 51 provided that "[a]n error in the [jury] instructions with respect to fundamental law or controlling principle may be assigned in a motion for a new trial though it was not otherwise called to the attention of the court." Minn. R. Civ. P. 51 (1970). That rule has been amended to provide that "[a] court may consider a plain error in the instructions affecting substantial rights that has not been preserved as required [i.e., by making an objection before an instruction is given or promptly after learning that an instruction has been given]." Minn. R. Civ. P. 51.04(b). "The new rule is modeled on its federal counterpart, Fed.R.Civ.P. 51, as it was amended in 2003." Minn. R. Civ. P. 51.04 2006 advisory comm. cmt. "The court's duty to give correct jury instructions in a civil action" is affected by various factors. Fed.R.Civ.P. 51 2003 amendments advisory comm. note. "The factor most directly implied by a 'plain' error rule is the obviousness of the mistake. The importance of the error is a second major factor." *Id.* The "plain error" rule in the civil context "is suited to correcting obvious instances of injustice or misapplied law." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 256, 101 S.Ct. 2748, 2754, 69 L.Ed.2d 616 (1981). Here, the law was obviously misapplied: the common-law negligence standard is not the standard by which railroad safety is judged.

The "plain error" language of Fed. R.Civ.P. 51(d)(2), which served as the basis for Minn. R. Civ. P. 51.04(b), was itself based on the plain-error rule set out in

Fed.R.Crim.P. 52(b).[11] "[T]here must be (1) error; (2) that is plain; and (3) the error must affect substantial rights. If these three prongs are met, the appellate court then assesses whether it should address the error to ensure fairness and the integrity of the judicial proceedings." *State v. Griller*, 583 N.W.2d 736, 740 (Minn.1998) (footnote omitted).[12]

The error was instructing the jury on the wrong standard of care to be applied to BNSF;[13] the transcript and the jury instructions show that the error was plain. Thus, the first two prongs are satisfied.

As to the third prong, the right to a fair trial is clearly among a party's substantial rights. *See, e.g., Frey v. Snelgrove*, 269 N.W.2d 918, 922 (Minn.1978) (noting that the goal of deciding whether a plaintiff's settlement with one defendant should be disclosed to the jury is "to preserve the remaining parties' right to a fair trial"). The jury heard evidence of BNSF's compliance with federal regulations. The erroneous instruction that the relevant standard was not compliance with federal regulations but common-law negligence was an error that affected BNSF's substantial right to a fair trial. The "substantial rights" element "is satisfied if the error was prejudicial and affected the outcome of the case." *Griller*, 583 N.W.2d at 741. Here, the jury's finding that BNSF was 90 percent at fault for the accident was predicated on its finding that BNSF had been negligent. The jury was not asked to find whether BNSF had violated federal law, and such a finding was an essential prerequisite to a finding of liability. Instructing the jury that the common-law standard of care applied to BNSF was a prejudicial error that doubtless affected the outcome of the case.

Finally, having concluded that BNSF was deprived of a fair trial by the erroneous jury instruction, we next "address the error to ensure fairness and the integrity of the judicial proceedings." *Id.* at 740. Though we are mindful of the protracted, troubled history of this case and its tragic elements, in the end the liability verdict derived from an erroneous standard of care as applied to BNSF. Because of the error of fundamental law in the jury instruction relative to preemption and the resulting affect on BNSF's substantial right to a fair trial, we are compelled to conclude that, to ensure fairness and the integrity of this judicial proceeding, BNSF is entitled to a new liability trial.[14]

11. In the criminal context, the "invited error" doctrine, providing that a party may not assert on appeal an error that party invited, does not apply to plain errors. *See, e.g., State v. Everson*, 749 N.W.2d 340, 348–49 (Minn. 2008) ("The invited error doctrine does not apply, however, if an error meets all four parts of the plain error test."); *State v. Goelz*, 743 N.W.2d 249, 258 (Minn.2007) (same).

12. Because the "plain error" language has been used in the civil context in Minnesota only since January 1, 2006, no Minnesota appellate decision has yet addressed it in the civil context, and we must look to the criminal context for its construction.

13. We note that the instruction was erroneous only with respect to BNSF. The jury was necessarily properly instructed on the common-law reasonable-person standard of care to be applied to the driver of the car, whose liability the jury was also required to consider.

14. Because the district court denied BNSF's motion for a new trial on the ground of an error of law, stating that "[respondent's] claims are not preempted by federal law," we do not review the denial for abuse of discretion or defer to the district court's legal conclusion. *See Halla Nursery*, 454 N.W.2d at 910 (when decision on motion for new trial is based on an error of law, standard of review is de novo); *Bondy v. Allen*, 635 N.W.2d 244, 249 (Minn.App.2001) (holding that appellate court does not defer to district court's decision on question of law).

### 3. New Damages Trial or Remittitur

The jury awarded identical damages of $6,000,000 to the next of kin of each of the four decedents. BNSF moved for a new damages trial or, in the alternative, remittitur; the district court denied the motion. Decisions on remittitur or a new trial are reviewed for an abuse of discretion. "[A] trial judge has large discretion in determining if damages are excessive and whether the cure is a remittitur or a new trial." *Hanson v. Chi., Rock Island & Pac. R.R.*, 345 N.W.2d 736, 739 (Minn.1984) (quotations omitted). A new trial may be granted for "[e]xcessive or insufficient damages, appearing to have been given under the influence of passion or prejudice." Minn. R. Civ. P. 59.01(e). But, through granting remittitur, a trial court may set aside a verdict it regards as excessive and "should not hesitate to do so where it feels the evidence does not justify the amount, even if the verdict was not actuated by passion and prejudice." *Mrozka v. Archdiocese of St. Paul & Minneapolis*, 482 N.W.2d 806, 813 (Minn.App. 1992), *review denied* (Minn. May 24, 1992).

"The recovery in the [wrongful death] action is the amount the jury deems fair and just in reference to the pecuniary loss resulting from the death . . . ." Minn.Stat. § 573.02, subd. 1 (2008); *see also Ahrenholz v. Hennepin Cnty.*, 295 N.W.2d 645, 648 (Minn.1980) (proper measure of damages for wrongful death is pecuniary loss resulting from death, not abstract value of human life).

The district court instructed the jury, in awarding damages, to consider the counsel, guidance, aid, advice, comfort, assistance, companionship, and protection the decedents would have given the claimants and the probable time the claimants would have had with the decedents in light of their relative life expectancies. The jury was instructed not to consider the decedents' past or probable future earnings, their living expenses, their pain and suffering, or any punishment of BNSF. Counsel for respondents recommended to the jury "somewhere in . . . that $10 to $12 million range per family, all numbers the same, no differentiation between families, no distinction between kids." Counsel for BNSF did not suggest an amount or a range of damages to the jury.

BNSF argues that, because the harm from any alleged negligence of BNSF was identical for each decedent, but the decedents' family situations were not identical, the identical awards were improperly focused on BNSF's conduct and therefore punitive. We disagree. Supported by the record, the jury may have reasonably decided that $6,000,000 awards were appropriate for different reasons for each decedent.

BNSF also argues that the awards shock the conscience because they exceed the amounts typically awarded in the wrongful deaths of minors. But in the area of wrongful-death damages for a child, "past cases represent history, not controlling law." *Lundman v. McKown*, 530 N.W.2d 807, 832 (Minn.App.1995), *review denied* (Minn. May 31, 1995).

We conclude that the district court did not abuse its discretion in denying BNSF's motions for a new trial on damages or remittitur.

### 4. Sanctions

This court reviews an award of sanctions under an abuse-of-discretion standard. *Leonard v. Nw. Airlines*, 605 N.W.2d 425, 432 (Minn.App.2000), *review denied* (Minn. Apr. 18, 2000).

The district court, relying on its inherent power, granted in part respondents' motion for sanctions and awarded them $4,180,398.90 against BNSF. The district

court awarded sanctions on three grounds: (1) spoliation, discovery, and evidentiary abuses; (2) misrepresentations and false testimony; and (3) witness abuses and obstructing law enforcement.[15] Specifically, the district court awarded respondents the expenses, costs, and attorney fees they incurred because of BNSF's misconduct, as well as one year's interest and one year's investment income on the amount of BNSF's liability to them.

▉▉▉▉ BNSF argues that the district court lacked inherent authority "to shift attorneys' fees and award delay damages." But "courts are vested with considerable inherent judicial authority necessary to their 'vital function—the disposition of individual cases to deliver remedies for wrongs and justice freely and without purchase; completely and without denial; promptly and without delay, conformable to the laws.'" Patton v. Newmar Corp., 538 N.W.2d 116, 118 (Minn.1995) (Patton II). "The task of determining what, if any, sanction is to be imposed is implicated by the broad authority provided the trial court." Id. at 119. No published Minnesota appellate court decision appears to specifically exclude or include attorney fees and delay damages from the range of possible conduct-based sanctions, although "[l]itigants ordinarily may not recover attorney fees absent a specific contract or statutory authorization." Osborne v. Chapman, 574 N.W.2d 64, 68 (Minn.1998). Absent any specific exclusion of attorney fees from possible sanctions, given the "broad authority" of the district court to determine what sanction to impose, and in light of the particular facts here, BNSF failed to establish that the district court abused its discretion in including attorney fees and delay damages in the sanctions.

BNSF also argues that, because the jury verdict indicates that respondents suffered no prejudice from BNSF's conduct, no sanctions are warranted. We disagree. For this argument, BNSF relies on Patton II, providing that "a reasonable and workable standard by which to test the impact of the spoliation [is] the prejudice to the opposing party." Patton II, 538 N.W.2d at 119. But this test pertains only to spoliation, not to the other reasons for which the district court imposed sanctions. Moreover, the district court found that factors other than prejudice, presented in Patton v. Newmar Corp., 520 N.W.2d 4 (Minn.App.1994), rev'd on other grounds, 538 N.W.2d 116 (Minn.1995) (Patton I), were also relevant in sanctioning spoliation: the degree of fault, the existence of a lesser appropriate sanction, whether the evidence lost is irreparable, and whether a party is being penalized for an attorney's misconduct. 520 N.W.2d at 8. Thus, factors other than prejudice may be considered, and the final verdict in respondents' favor does not preclude sanctions against BNSF.

BNSF argues further that the district court violated its duty to impose the least restrictive sanctions. See Patton II, 538 N.W.2d at 118 (noting that this court, in Patton I, suggested that power to sanction is tempered by duty to impose least restrictive sanction available). Specifically, BNSF argues that the delay-related sanctions are an abuse of discretion because respondents, as well as BNSF, stipulated to delaying the trial for one year. The district court found that:

> If evidence had been properly preserved, discovery requests timely answered, [and] witnesses cooperative, and had BNSF been reasonably candid with [respondents] and this Court, a one-year

---

**15.** Except for pressure directed at one BNSF employee during trial, all the acts for which sanctions were awarded occurred before the trial.

delay most likely would not have been necessary and, perhaps, the need for a trial would have [been] obviated altogether. This Court remains convinced, and the record supports the finding[,] that the one-year delay in the proceedings can be primarily attributed to BNSF's misconduct.

BNSF notes that the scheduling orders themselves indicate that respondents' counsel agreed to the delays, but respondents explain, and the district court found, that they agreed to the delays because they had inordinate difficulty in obtaining evidence from BNSF.

Finally, BNSF argues that the attorney-fee award was speculative because respondents' attorneys worked on a contingency-fee basis and kept no hourly records; both the number of hours and the hourly fees were estimates. But those estimates were reviewed by the district court before being accepted. BNSF provides no support for its view that contingency-fee attorneys who anticipate an award of their fees are required to keep hourly records.

The district court did not abuse its discretion in awarding sanctions. The award of $4,180,398.90 included: (1) $16,647.69 in expenses incurred because of BNSF's misconduct; (2) $90,111.21 in costs incurred because of BNSF's misconduct; (3) $999,640 for attorney fees linked to BNSF's misconduct; (4) $864,000, or 4% of the amount of BNSF's total liability to respondents, for postjudgment interest lost by respondents because of BNSF's one-year delay; and (5) $2,210,000, or 10.23% of the liability amount, for investment income lost by respondents because of BNSF's one-year delay. The first three items (totaling $1,106,398.90) were unrelated to the total amount of BNSF's liability to respondents, but the fourth and fifth items (totaling $3,074,000) are percentages of the amount of that liability. Because

liability will be determined anew on remand, we affirm the sanctions award but remand the items calculated as a percentage of BNSF's liability for possible recalculation after the new trial.

### DECISION

We affirm the denial of BNSF's motion for JMOL because respondents were entitled to bring their state-law claims, provided that the federal standard of care was used. We affirm the denial of BNSF's motion for a new damages trial or remittitur and the award of sanctions because the district court did not abuse its discretion. We reverse the denial of BNSF's motion for a new liability trial and remand for a new trial on liability because the erroneous jury instruction on the standard of care was an error of fundamental law; in light of this reversal, we do not address BNSF's motions for a new liability trial based on newly discovered evidence and alleged trial errors. We also remand those items in the sanctions award that are contingent on the amount of BNSF's total liability for possible recalculation after the new liability trial.

**Affirmed in part, reversed in part, and remanded.**

MINGE, Judge (concurring in part, dissenting in part).

I concur in parts one, three and four of the majority opinion. I respectfully dissent from part two, granting a new trial based on error in the jury instructions, and would affirm.

This case arises out of a tragic accident that occurred on September 26, 2003. The ensuing litigation has been the subject of several years of discovery and a six-week jury trial. The parties were represented by experienced lawyers, the trial was presided over by a respected judge, and the jury reached its verdict. The essence of

my disagreement with the majority is that I would evaluate the jury-instruction issue for plain error pursuant to Minnesota Rules of Civil Procedure 51.04(b) and 59.01(f).

Rule 51 was rewritten and the present language was adopted effective January 1, 2006. Minn. R. Civ. P. 51. It applied to the trial court proceedings in this case and applies to the appeal before this court. The rule gives parties the right to propose instructions (rule 51.01), requires that the district court provide parties with its proposed instructions and an opportunity to object (rule 51.02), establishes that objections must be timely and defines what is timely (rule 51.03), gives parties the right to assign error (rule 51.04), and in rule 51.04(b), gives the district court discretion to "consider a plain error in the instructions affecting substantial rights that has not been preserved as required by rule 51.04(a)(1) or (2)." Rule 59.01 recognizes the discretion of the district court to grant a new trial based on an error in instructions. Minn. R. Civ. P. 59.01(f).

To meet the plain-error standard of rule 51.04(b), the objecting partly must establish that four considerations are met: that there was error, that it was plain or obvious, that it substantially affected the verdict, and that corrective judicial action is required to ensure the fairness and integrity or public reputation of the judicial proceedings. *State v. Reed*, 737 N.W.2d 572, 583 (Minn.2007); *see also BBSerCo, Inc. v. Metrix Co.*, 324 F.3d 955, 960 (8th Cir.2003) (adding that an error in instructions should only result in a reversal if the district court's decision would be "a miscarriage of justice if left uncorrected"). Although this plain-error standard is used in both criminal and civil proceedings and

the four prongs are the same in both areas, courts agree that a reversal is harder to obtain in civil appeals than criminal. *Johnson v. Ashby*, 808 F.2d 676, 679 n. 3 (8th Cir.1987); *see Mjos v. Vill. of Howard Lake*, 287 Minn. 427, 437, 178 N.W.2d 862 (1970) (deferring to district court discretion granting new trial). The plain-error standard is only designed to provide relief in the most egregious cases. *Horstmyer v. Black & Decker, U.S., Inc.*, 151 F.3d 765, 771 (8th Cir.1998); *Johnson*, 808 F.2d at 679 n. 3. No reported Minnesota court decisions have reversed a district court determination in civil litigation that its use of unobjected-to jury instructions did or did not constitute error requiring a new trial.

Here, applying the plain-error standard, I agree with the majority that instructing the jury that appellant's liability could be established on a common-law, state-negligence basis was plain error. The third and fourth prongs are more difficult to apply.

The third prong of the plain-error test requires that we determine whether the error substantially affected the verdict. Under the plain-error test, the challenging party generally has the burden of persuasion. *Reed*, 737 N.W.2d at 583–84. The plain-error test does not distinguish between more pedestrian errors and fundamental errors. Although I recognize that prior to the adoption of the plain-error language in rule 51.04, Minnesota caselaw placed the burden on the respondent to establish that a fundamental error did not affect the result, this caselaw is eclipsed by the adoption of the rule. *See Hilligoss v. Cargill, Inc.*, 649 N.W.2d 142, 147 (Minn. 2002) (examining prejudice in pre–2006 litigation).[1] Because we have no reported

---

1. I note that *George v. Estate of Baker*, 724 N.W.2d 1 (Minn.2006), which is relied on by

the majority, not only is pre–2006 litigation

Minnesota decision dealing with the application of rule 51.04 to fundamental error, we should look to federal caselaw under the federal rule 51.04 which has identical language. *See* 9C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 2558 (3d ed.2008) (summarizing federal treatment of plain error and a change in law in text and accompanying footnotes 16 to 23).

Here, I agree with the majority that the error is serious and may have affected the outcome of the jury's liability determination. However, respondents introduced evidence that BNSF failed to comply with the federal standards of care established by regulation and with its own standards that were allegedly created pursuant to federal regulation. Respondents' brief devotes multiple pages to detailing violations by BNSF of federal rules and of BNSF's own standards. This may constitute a record adequate for a jury to determine that liability was established using the proper federal standard. 49 U.S.C. § 20106(b)(A), (B) (Supp. II 2008).

In considering the impact of the erroneous jury instruction, I note that the district court determined that the conduct of BNSF (that resulted in dramatic sanctions) complicated the proof of various violations. Given the significance of the evidence of violations, the misconduct of BNSF in creating a troubled record, the instructions provided the jury, and the deficiencies in the instructions; it is not self-evident that BNSF was substantially prejudiced by the complained-of common-law instruction. To the extent that there was ample evidence in the record to establish liability on the basis of violations of law, regulation, and BNSF's own standards, the error in instructions was arguably harmless, even if it was fundamental.

Here, BNSF has the burden of establishing the requisite prejudice. Although BNSF addresses the topic of fundamental error, it does not discuss or apply the plain-error analysis. In reviewing the record, I conclude that BNSF does not establish that there was not an adequate independent basis for establishing liability. Conversely, because the district court denied the motion for a new trial without recognizing the plain error in its jury instructions, we do not have the benefit of its analysis of the prejudice. In this situation, we cannot determine whether the district court abused its discretion on the third prong. It never reached it. If this third prong of the plain-error test were the end of the analysis, I would remand to the district court for a determination whether BNSF met its burden of establishing the requisite prejudice.

Even if BNSF established that the error affected its substantial rights, the plain-error test requires a fourth and final step. We examine "whether the error should be addressed 'to ensure fairness and the integrity of the judicial proceedings.'" *Reed,* 737 N.W.2d at 583 (quotation omitted). Here, prior to instructing the jury, the parties and the district court engaged in exhaustive consideration of the proposed jury instructions. BNSF had every opportunity to submit instructions and did so. Indeed, as the majority points out, BNSF even proposed one of the instructions that it now challenges on appeal. In addition, BNSF was fully aware of the instructions requested by respondents and of the instructions the district court proposed to give. The record does not disclose any objection. BNSF stood silent with respect to the instructions that apparently violate Railroad Law 101. When one of the largest railroads in our country and its legal counsel decline the opportunity to object or even comment on instructions that on

but also was a situation where the appealing party objected to the instruction at trial.

appeal are characterized as a fundamental error of basic federal railroad law, this posture is fairly characterized as acquiescing in the instructions given.

I submit that acquiescence presents the question of invited error and is relevant to the fourth prong of the plain-error standard and to this appeal. Minnesota has recognized that litigants who actually participate in the development of instructions and who do not object to instructions will not be heard to complain on appeal that the instructions are improper. *See Isler v. Burman,* 305 Minn. 288, 232 N.W.2d 818 (1975) ("One who procures error may not assert such error as the basis for obtaining a new trial."). No reported Minnesota case has been brought to this court's attention reversing a decision of a trial judge denying a new trial in a civil case in the setting of invited error. The caselaw discussed by the majority addressing such instructional errors involved either appeals in which an objection was made prior to charging the jury or appellate affirmance of the decision by the district court granting a new trial. Federal caselaw dealing with this issue of invited error indicates an unwillingness to let culpable parties benefit from their conduct. *See Beardshall v. Minuteman Press Int'l, Inc.,* 664 F.2d 23, 27 (3rd Cir.1981) (stating failure to object ordinarily bars consideration of the issue on appeal).

The question on appeal is whether fairness and integrity in judicial proceedings require that BNSF be given the opportunity to have a second trial after a six-week trial, and to demand the benefit of new witnesses identified after the completion of the first trial. We should not allow parties the opportunity to stand-by, not object to erroneous jury instructions, and see how the first trial will turn out, expecting that if the result is adverse the judge's error will enable them to secure a new trial. Here, we must add to the mix the sanc-tioned misconduct of BNSF, the open question of whether there is any substantial prejudice, the substantial discretion granted to the district court to determine whether a new trial should be granted, and the significant deference Minnesota appellate courts have given to the district court's exercise of this discretion.

In analyzing whether plain error so implicates the fairness and integrity of judicial proceedings that reversal is required, some courts have considered the precedent-setting nature of the litigation. The liability for a single accident does not present a far-reaching legal issue. *See Nat'l Ass'n of Social Workers v. Harwood,* 69 F.3d 622, 628 n. 5 (1st Cir.1995) (reverse if failure to do so would threaten frustration of some broadly important right). This resembles the historic attitude of many courts that failure to object to an instruction that misstates the law simply results in that instruction being the law of the case. *See, e.g., Voohries–Larson v. Cessna Aircraft Co.,* 241 F.3d 707, 713, 716–18 (9th Cir.2001) (indicating strict compliance with former Fed.R.Civ.P. 51). The culpable party simply lives with its mistakes in the conduct of the litigation. *Carter v. Chi. Police Officers,* 165 F.3d 1071, 1077–78 (7th Cir.1998). Finality and careful use of judicial resources are important considerations that offset what may be an erroneous instruction and preclude a quick finding that the fairness and integrity of the legal system is at stake.

I conclude that under the circumstances of this case, the fourth prong of the plain-error standard, ensuring fairness and integrity in judicial proceedings, is not met and that this court should not reverse the district court's denial of a new trial. I would affirm.